**Ex parte Sylvia Rios BOGIA, Appellant.**

No. 01–01–00266–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 30, 2001.

Rehearing Overruled Sept. 20, 2001.

Julia Argelia Maldonado, Houston, for appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Julie Klibert, Assistant District Attorney, Houston, for the State.

Panel consists of Justices COHEN, HEDGES, and SMITH.[*]

## OPINION

COHEN, Justice.

Appellant is charged with second degree felony theft of more than $100,000 and less than $200,000 from Air Liquide, a corporation. TEX. PEN.CODE ANN. § 31.03(e)(6) (Vernon Supp.2001). She challenges the trial court's refusal to lower her bail from $360,000. We grant relief and order bail reduced to $10,000.

### Facts

Evidence at the bail reduction hearing included an affidavit by Bryan Vaclavik of the Harris County District Attorney's Office, based on information from Air Liquide's employee, Stephanie Payne. Air Liquide prohibited its employees from having a financial stake in companies with which it contracted.[1] Appellant's husband, James Bogia, was employed by Air Liquide. While he was so employed, appellant established an assumed name, Bastrop–Hughes, which contracted with Air Liquide to clean two polluted sites. According to Payne, Bastrop–Hughes used employees who were day laborers neither trained nor equipped for such work. Air Liquide employed James Bogia, in part, to monitor the work of companies, such as Bastrop–Hughes, with which it contracted to do the environmental clean-up. Payne believes James Bogia obtained his employment with Air Liquide under false pretenses, used the alias of Michael Wilting, and misrepresented his educational credentials.

After the Houston police began investigating one of the sites, Payne discovered Mr. Bogia's true identity. Payne also discovered that appellant had used her maiden name (Sylvia Rios) on assumed-name forms for "Bastrop–Hughes." Further investigation revealed the lack of qualifications and the unfitness of the Bastrop–Hughes employees to perform the contract work for Air Liquide. Payne stated that had Air Liquide known this information, it would not have contracted with Bastrop–Hughes or paid it $183,214.50. Some of these funds were traced to an automobile registered to Michael Wilting, Mr. Bogia's alias name.

Relatives testified appellant moved to Houston in 1981 and had lived at the same Houston area address for at least four years. She had been married 15 years to James Bogia, who is now in jail charged with the same crime. Appellant's relatives in the Houston area include her 12–year-old son, her mother, and eight siblings. To their knowledge, appellant had never been convicted of a crime and was not a danger to the community.[2] Appellant's family does not have assets worth $360,000, and appellant does not have property worth that amount. However, appellant's brother testified appellant and her husband, James Bogia, owned a home in Harris County that had a $120,000 mortgage. The value of the home and of appellant's interest was not established. Appellant's brother testified he did not think appellant had $360,000. The family does not have the $36,000 it would take for a bonding company to post bond for appellant's bail.

---

[*] The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

[1] Appellant was not an employee of Air Liquide, and she was not alleged or proved to have known of its policy.

[2] On cross-examination, the prosecutor asked appellant's relatives if they knew about appellant being convicted for theft, apparently of $5.00 in 1983. None knew of it, and there was no evidence of such a conviction.

## Propriety of Bail

■ There is no precise standard for reviewing bond settings on appeal. *Ex parte Pemberton*, 577 S.W.2d 266, 267 (Tex.Crim.App.1979). We are guided by article 17.15, which provides:

The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

(1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

(2) The power to require bail is not to be so used as to make it an instrument of oppression.

(3) The nature of the offense and the circumstances under which it was committed are to be considered.

(4) The ability to make bail is to be regarded, and proof may be taken upon this point.

(5) The future safety of a victim of the alleged offense and the community shall be considered.

TEX.CODE CRIM. P. ANN. art. 17.15 (Vernon Supp.2001).

■ "[I]t is the defendant's burden to prove that the bail is excessive and he must *usually* show that he made an unsuccessful effort to furnish bail in the amount fixed." *Ex parte Willman*, 695 S.W.2d 752, 754 (Tex.App.—Houston [1st Dist.] 1985, no pet.) (emphasis supplied). In *Willman*, this Court approved a $300,000 bail for a defendant facing 15 years to life in prison for delivering over four pounds of cocaine. He owned $50,000 in property, earned $2000 per month, lived in California, and had no apparent ties to Texas. This Court noted that "the very nature" of the drug trade justified high bonds. *Id.* at 753. Appellant's bond is much higher than that in *Willman*, even though she is facing a much lesser sentence, she has greater community ties, and she is not accused of a drug crime.

■ Appellant did not testify, but there was evidence her relatives could not make bail. The accused's ability or inability to make bond is relevant, but not controlling. *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim.App.1975). While, as *Willman* states, a defendant "must usually" show that she tried and failed to make bail, 695 S.W.2d at 754, we believe that because of the extraordinary amount of this bail, this is not the "usual" case. *See Dueitt*, 529 S.W.2d at 532 (excusing the absence of such evidence because the court will not require accused to do a useless thing). In any event, there is better evidence than appellant's testimony that she cannot make bail—she has lain in jail without trial for more than six months.

### A. The Case Law

The bail in this case far exceeds what has been approved in theft cases, and even in capital murder cases, by the Court of Criminal Appeals and by this Court.

The case law from the Court of Criminal Appeals does not support bail in this amount. In *Ex parte Keller* and *Ex parte Franklin*, 595 S.W.2d 531 (Tex.Crim.App. 1980), the defendants were charged with stealing more than a million dollars. The trial court originally set bail at $600,000 for each defendant ($200,000 in each of three cases against each defendant), but reduced Keller's bond to $300,000. *Id.* The Court of Criminal Appeals then lowered bail to $30,000 for each petitioner ($10,000 per case), even though Franklin had two prior felony theft convictions and Keller had prior convictions for felony forgery and misdemeanor theft. *Id.* at 532, 533. Appellant has no convictions and is accused of stealing less than 20% of what Keller and Franklin were accused of, but her bail is 12 times theirs. *See also Ex*

*parte Rubac,* 611 S.W.2d 848, 850 (Tex. Crim.App.1981) (reducing bail on appeal from $100,000 to $25,000 *after* conviction and 10–year sentence for drug offense); *Pemberton,* 577 S.W.2d at 267 (reducing bail on appeal from $55,000 to $25,000 *after* conviction and five-year sentence for aggravated robbery).

In capital murder cases, the Court of Criminal Appeals has repeatedly reduced bail to amounts much lower than appellant's, ranging from $100,000 to $20,000, with most in the $20–50,000 range. *See Ex parte McDonald,* 852 S.W.2d 730, 733–35 (Tex.App.—San Antonio 1993, no pet.) (collecting cases) (finding no case in which the Court of Criminal Appeals had approved a bond as high as $300,000 and concluding "... it would be an unusual case which would justify such a high bail amount." *Id.* at 735, n. 4); *Ex parte Delk,* 750 S.W.2d 816 (Tex.App.—Tyler 1988, no pet.) (capital murder bail reduced from $100,000 to $35,000); *Ex parte Goosby,* 685 S.W.2d 440 (Tex.App.—Houston [1st Dist.] 1985, no pet.) (reducing capital murder bail from $250,000 to $100,000 and affirming bail of $25,000 for attempted capital murder).

This Court has frequently lowered bail in theft cases to far below the value of the property allegedly stolen. Because these opinions are unpublished, we do not cite them here as authority. Federal courts have apparently done the same. The *Houston Chronicle* of August 4, 2001 reported that a local United States magistrate set bail of $50,000 for a wire fraud defendant accused of stealing $300,000.

## B. The Harris County District Court Bail Schedule

The district judges of Harris County have established a "District Court Bail Schedule," which is found at volume 14, page 161 of the Minutes of the Harris County District Courts. It is attached as an appendix. The highest bail specifically provided in that schedule is $30,000 for a person with a prior felony conviction who is charged with a first-degree felony or for one who is charged with an offense under Texas Code of Criminal Procedure, article 42.12, section 3g (Vernon Supp.2001) (murder, capital murder, indecency with a child, aggravated kidnapping, aggravated sexual assault, aggravated robbery, sexual assault, certain drug offenses, or using a deadly weapon during a felony). Appellant is not in either category, but her bail is 12 times $30,000. Her bail is 18 times the amount ($20,000) provided in the Bail Schedule for defendants (unlike appellant) with prior convictions who are accused of a second degree felony, and it is 36 times the amount ($10,000) provided for second degree felony defendants without prior convictions, like appellant. The Bail Schedule provides, however, for bail in cases of "large quantities of stolen property" to be set at double the value of the property. The trial judge apparently followed that formula. The bail here is almost exactly that amount.

We consider it significant that if the Harris County District Court Bail Schedule had been followed in the *Keller* case, bail would have been $2 million. *Keller,* 595 S.W.2d at 531 (defendant allegedly stole more than $1 million). Instead, the Court of Criminal Appeals in *Keller* set bail at $30,000, a mere 1.5% of the Bail Schedule amount. Stated another way, the Court of Criminal Appeals in *Keller* set bail for defendants with prior felony convictions who were accused of a far greater theft at 3% of the amount they allegedly stole, not 200% as the Bail Schedule provides and as the trial court did here. We conclude that the Bail Schedule's formula for large theft cases cannot be reconciled with *Keller.* If a $360,000 bail can be justified here, it will not be because of any formula. On the contrary, it would have to

be justified by extraordinary facts in this particular case.

## C. Applying Article 17.15 to This Case

■ We will now consider those facts, as well as the factors established by the legislature to "govern the exercise of discretion" in setting the amount of bail. *See* TEX.CODE CRIM. P. ANN. art. 17.15.

First, the State concedes that appellant poses no threat to the victim, Air Liquide. Thus, that factor does not justify this bail. *See id.*, art. 17.15(5).

Second, we will consider the nature of the offense and the circumstances of its commission. *See id.*, art. 17.15(3). Appellant is charged with a second-degree felony, which has a statutory punishment range of 2 to 20 years, but appellant's realistic exposure to punishment is less, probably within the 2–10 year range of a third degree felony. She is accused of nonviolent theft from a large company, and the State has not alleged or proved that she has any prior convictions or even any prior charges. Judges and juries often give sentences of less than 10 years, even probation, for such crimes. It would be unusual for a defendant like appellant to get more than 10 years for a crime like this. The record shows she has a 15–year marriage, a 12–year–old child, a large supportive family, and has resided the last four years in her own home in Harris County. Also charged with this same offense is her husband, who, the State says, has been to prison before. These facts would favor appellant at the punishment stage, if any. When, as here, spouses are charged with committing crimes together, it is common for the less culpable one to argue, and for judges and juries to conclude, that he or she did not act out of greed, but out of misplaced trust in, loyalty to, love for, fear of, or influence from his or her spouse. Here, James Bogia's prior conviction and employment with Air Liquide would make him appear more culpable. Since, for these reasons, he is more likely than appellant to get a prison sentence (and may already have it before her trial begins), prison for her would leave their son parentless, all of which would favor a short prison term or probation for appellant. Finally, if appellant is convicted and does not get probation, she already has served more than six months (plus any applicable credit for good conduct)[3] on her sentence, which tends to reduce her incentive to flee if granted a lower bail.

The circumstances of the commission of appellant's alleged crime are significant. They may not outrage a jury. The State alleges that appellant's husband misrepresented his credentials to get a job supervising Air Liquide's environmental remediation projects. He then violated company policy by granting such contracts to his own company, which was nominally headed by his wife, appellant. This is not a case in which money was paid for nothing, however. According to the State's brief, Bastrop–Hughes performed work on the project, but it was done by unqualified people and contrary to the contract. Although Air Liquide contends it never would have hired such an unqualified company except for the husband's misrepresentations, a jury may see this as a civil dispute involving resumé padding, a scheme in which appellant had a far lesser role than her husband. The facts do not justify this bond.

■ Third, we consider whether the bail is being used as an instrument of oppression. *See* TEX.CODE CRIM. P. ANN. art. 17.15(2). Is $360,000 oppressive? We doubt that one person in a hundred could

---

**3.** This could double the flat-time credit appellant has already earned. *See* TEX.CODE CRIM. P. ANN. art. 42.032 (Vernon Supp.2001).

make it alone, without the aid of a spouse or others. When bail reaches $360,000, many bondsmen cannot make it, much less defendants. In a 1995 unpublished bail appeal in this Court, evidence showed that no Texas bondsman was qualified to write a bond of $600,000 and that the required collateral would be two times that amount. Many millionaires, with their restricted stocks, pledged assets, jointly owned assets, future interests, trusts, real estate, and retirement funds, all of which are difficult to liquidate, could not meet those requirements. At the $360,000 level, bail is oppressive unless justified by unusual circumstances. Such an amount totally displaces the presumption of innocence and replaces it with a guaranteed trial appearance assured by incarceration without trial. It is not the purpose of bail, however, to "guarantee" a defendant's appearance at trial. That cannot be done except by abolishing the right to bail. That is why our Code of Criminal Procedure does not require bail that would "guarantee" a defendant's appearance, but only bail that "shall be sufficiently high to give *reasonable assurance* that the undertaking will be complied·with." *See id.* art. 17.15(1) (emphasis added). The oppressive nature of a $360,000 bond favors granting relief.

■ Fourth, we consider what amount is necessary to give "reasonable reassurance" that appellant will appear. *See id.* art. 17.15(1). Our state and federal constitutions guarantee "reasonable" bail even though that necessarily means the defendant might not appear for trial. "Reasonable bail" is reasonable because it creates and limits the risks of both sides. Any grant of bail risks the defendant's flight, but bail limits that risk by reducing the money available to fund the flight, while simultaneously creating a fund to finance an effort to re-arrest the defendant. $360,000 vastly exceeds those justifications. Therefore, this factor does not justify this bail.

■ A final factor in appellant's favor is that she has been jailed without trial for more than six months. Lengthy pretrial detention should not be a substitute for a trial, and the purpose of our constitutional and statutory law on bail is to guarantee that it is not.

We conclude that the bail in this case is excessive in relation to case law and in relation to the evidence of appellant's possible guilt and likely punishment, and that the bail is less justifiable the longer it endures.

We reverse the trial court judgment denying habeas relief. We grant relief and order appellant's bail set at $10,000, the amount provided in the District Court Bail Schedule for defendants like appellant.

# District Court Bail Schedule

| Offense | Bail |
|---|---|
| All capital felonies | No Bond |
| All first degree felonies not particularly specified below | $20,000.00 |
| All second degree felonies not particularly specified below | $10,000.00 |
| All felony DWI's not particularly specified below | $10,000.00 |
| All third degree felonies not particularly specified below | $ 5,000.00 |
| All fourth degree (State Jail) felonies not particularly specified below | $ 2,000.00 |

## Repeat Offenders

| | |
|---|---|
| Habitual | No Bond |
| First degree felony with previous conviction | $30,000.00 |
| Second degree felony with previous conviction | $20,000.00 |
| Felony DWI with previous felony DWI conviction | Double bond amount for each previous felony DWI conviction. |
| Third degree felony with previous conviction | $10,000.00 |
| Fourth degree (State Jail) felony with previous conviction | $ 5,000.00 |
| Fourth degree (State Jail) felony with more than one previous conviction | $15,000.00 |

## Defendant on Bail for any Felony Charge with:

| | |
|---|---|
| First degree felony | No Bond |
| Second degree felony | No Bond |
| Third degree felony | No Bond |
| Fourth degree (State Jail) felony | No Bond |

## Particular Situations

| | |
|---|---|
| Multiple Counts | Separate standard bail for each offense in the transaction. |
| Person on felony probation for any grade of felony | No Bond |
| Any 3g offense or where deadly weapon alleged | $30,000.00 |
| Motion to Revoke Probation | No Bond |
| Motion to Adjudicate Guilt | At the Judge's Discretion |
| Large quantities of controlled substance or large quantities of stolen property | Double the value of the controlled substance or property. |

❖

Established: 4/2/79
Amended: 2/4/82
Amended: 7/13/94  Effective 9/1/94
Amended: 9/7/94  Effective 9/8/94
Amended: 9/11/96  Effective 9/18/96
Amended: 1/7/98  Effective 2/1/98