

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00010-CR

_____

Ex parte Khiry Deshawn Taylor

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. DC30-CV2019-1283

Before Gabriel, Womack, and Wallach, JJ.
Per Curiam Memorandum Opinion

## MEMORANDUM OPINION

Appellant Khiry Deshawn Taylor appeals from the trial court's order denying his pretrial, habeas-corpus application for a bail reduction.[1] He argues that because his ties to the community and the trial court's release conditions sufficiently ensure his presence in court for trial, the trial court abused its discretion by refusing to reduce his set bail amount from $500,000 to a more reasonable amount. After balancing the applicable factors and giving the appropriate deference to the trial court's determinations, we conclude that $500,000 is not supported by the record and was oppressive. Thus, the trial court abused its discretion by denying Taylor's application.

## I. BACKGROUND

### A. TAYLOR'S ARREST

In May 2019, Taylor was arrested under a warrant for the aggravated robbery of Keith Singleton. The warrant affidavit reflected that Meredith Lopez, Taylor's girlfriend, had contacted Jonacey Clement and stated that Clement's brother—Singleton—had been in a "disturbance" with Taylor. Lopez said that she had heard gunshots and then she hung up. Singleton had been shot and gravely injured. Police officers, who had been dispatched to Singleton's apartment complex, talked to a

---

[1]Because this is an appeal from the denial of an application for habeas-corpus relief and not an appeal from an order setting bail or from the denial of a pretrial motion for bail reduction, we have jurisdiction over this appeal. *See Ragston v. State*, 424 SW.3d 49, 50, 52 (Tex. Crim. App. 2014); *Vasquez v. State*, Nos. 03-13-00717 to 00718-CR, 2014 WL 3732962, at *1 n.2 (Tex. App.—Austin July 25, 2014, no pet.) (mem. op., not designated for publication).

witness who said that "she saw a black male wearing a red shirt on the second floor [of a] stairwell of building 3" and that "she saw the black male shoot a gun [three times] and then run away." The officers watched a surveillance video of the complex and saw a black man, wearing a red shirt and blue shorts, get out of a black Ford SUV and go to building 3. He was not carrying a bag. The man then emerged running for the SUV and carrying a blue bag. Taylor "matched the person in the video." When officers later arrived at Taylor and Lopez's home, a black Ford SUV, matching the witness's description, was parked in the driveway. Officers determined that Taylor matched the man seen in the surveillance video.

After his arrest, a magistrate set Taylor's bail at $1,000,000. *See* Tex. Code Crim. Proc. Ann. art. 15.17(a). Lopez and Taylor's cousin were also arrested in connection with the aggravated robbery and their bail amounts were similarly set at $1,000,000.

### B. FIRST APPLICATION FOR BAIL REDUCTION

Taylor filed a pretrial habeas-corpus application for a bail reduction. *See id.* arts. 11.01, 11.23. At the hearing, Taylor's father Eric testified that if released, Taylor would live with Eric in Wichita Falls. Eric stated, however, that his job required him to be away from home ten out of every fourteen days. Taylor's brother D'Angelo lived with Eric, and Eric testified that he was a "good kid" although he had "a little incident months ago," involving "driving or something, . . . drinking or something like that, misdemeanor." Several of Taylor and Eric's relatives lived in Wichita Falls near

3

Eric's home; Taylor's mother lived in Tarrant County. Taylor, who was twenty years old at the time of the hearing, had lived in Wichita Falls with Eric for four years before moving in with Lopez shortly before the aggravated robbery occurred. Lopez also lived in Wichita Falls. Taylor had previously been employed in Wichita County and had the ability to attend any court hearings.

When he was a juvenile, Taylor had been placed on deferred adjudication community supervision for the felony offense of robbery. Taylor successfully completed the terms of community supervision, and this charge was dismissed. Eric, who had two prior felony convictions for cocaine possession, thought Taylor "probably" smoked marijuana and although Eric acknowledged the possibility that Taylor dealt drugs, Eric denied affirmatively knowing that Taylor did so. Similarly, Eric testified that Taylor was not a gang member but that Eric had "been hearing stories" indicating that Singleton could have been involved with a criminal street gang. For that reason, Eric was concerned about Taylor returning to work in Eric's lawncare business if released because of a perceived threat of retaliation on Singleton's behalf.

Eric testified that Taylor could not post bond to satisfy a $1,000,000 bail amount and estimated that Taylor's assets (including three cars, a dirt bike, and large televisions) could be sold for only about $8,000 to $10,000, short of the $80,000 a bail bondsman required to secure a $1,000,000 bail bond. Eric had retained counsel to represent Taylor, and he testified that he could help Taylor post a bond for a $50,000

4

bail amount. Eric believed Taylor could follow any imposed release conditions, including staying away from firearms and complying with a curfew.

The trial court granted the application and reduced Taylor's bail to $500,000. In doing so, the trial court expressly stated that its ruling was based on its credibility determinations, "the circumstances of the offense and how it was committed, the nature of the offense, prior [juvenile] criminal history . . ., future safety of the victim and of the community."[2] The trial court also imposed several release conditions. *See, e.g.*, *id.* arts. 17.40, 17.43. Taylor appealed this order, but later voluntarily dismissed the appeal. *See Ex parte Taylor*, No. 02-19-00265-CR, 2019 WL 5792807, at *1 (Tex. App.—Fort Worth Nov. 7, 2019, no pet.) (per curiam) (mem. op., not designated for publication).

## C. SECOND APPLICATION FOR BAIL REDUCTION

In short order, Taylor filed a second habeas-corpus application seeking a bail reduction and argued that $500,000 "is excessive, oppressive, and beyond the financial means of . . . Taylor." At the hearing on the second application, which was heard by a different trial judge, the State and Taylor jointly proffered the reporter's record from the hearing on Taylor's first reduction application, which included the warrant affidavit. The trial court admitted the joint exhibit.

---

[2]The trial court also stated that its ruling was based "according to the testimony of even [Taylor] himself," despite the fact that Taylor had not testified at the hearing.

Eric then testified that Taylor was unable to meet a $500,000 bail amount. But Eric stated that if released, Taylor would live with one of his grandfathers and not with Eric because "it would be a better environment." Taylor's grandfather, a retired registered nurse, owns a karate studio and lives in Wichita Falls. Since the prior hearing, Eric had changed jobs and would be working locally. Eric also explained that Taylor and Lopez's eight-month-old daughter was living with Lopez's mother and that Eric ensured the child was "getting everything, Pampers, milk, diapers, whatever," which would become Taylor's responsibility if he were released on bond. The trial court, after considering the application and "the evidence before the Court," denied the application. The trial court did not make any oral or written findings of fact. *See Ex parte Peterson*, 117 S.W.3d 804, 819 n.68 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

## D. APPEAL

After Taylor filed a notice of appeal from the denial, we ordered the parties to brief the issues raised in Taylor's second application. *See* Tex. R. App. P. 31.1(b). Taylor argues that based on the evidence at the first and second hearings, a bail amount in the range of $50,000 to $75,000, along with the previously imposed release conditions, would ensure Taylor's appearance for trial.[3]

---

[3]As in the trial court, Taylor is represented on appeal by retained counsel.

## II. STANDARD OF REVIEW AND GOVERNING STATUTES

"Setting a bail amount is a fact-driven determination that must be judged on a case's own unique facts." *Ex parte Cook*, No. 02-18-00537-CR, 2019 WL 2323643, at *3 (Tex. App.—Fort Worth May 31, 2019, no pet.) (per curiam) (mem. op., not designated for publication). Although bail determinations are committed to a trial court's discretion, which we review for an abuse, that discretion is governed by the constitution and the code of criminal procedure. *See* U.S. Const. amend. VIII; Tex. Const. art. I, §§ 11, 13; Tex. Code Crim. Proc. Ann. art. 17.15; *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). In our review of a trial court's ruling on a pretrial habeas-corpus application, we view the evidence in the light most favorable to the trial court's ruling, deferring to any implicit fact findings that are supported by the record. *See Phuong Anh Thi Le v. State*, 300 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see also Peterson*, 117 S.W.3d at 819 (citing *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999)). But if the ruling is not supported by the record, we may "make contrary findings." *Peterson*, 117 S.W.3d at 819 n.67 (citing *Ex parte Adams*, 768 S.W.2d 281, 288 (Tex. Crim. App. 1989)).

In setting a bail amount, the trial court must strike a balance between the defendant's presumption of innocence and the State's interest in assuring the defendant's presence at trial. *See Ex parte Simpson*, 77 S.W.3d 894, 896 (Tex. App.—Tyler 2002, no pet.) (per curiam); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998, no pet.). The accused has the burden to show that the bail amount

is excessive. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980).

The court's discretion in setting the amount of bail is governed by the following factors:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. To ensure these factors are appropriately weighed and to provide a framework by which to determine appropriate bail, courts consider the defendant's work record, his family and community ties, his length of residency, his prior criminal record, his conformity with previous release conditions, the existence of any other bonds outstanding, and any aggravating circumstances alleged to have been involved in the charged offense. *See Rubac*, 611 S.W.2d at 849–50; *Ex parte Nimnicht*, 467 S.W.3d 64, 67 (Tex. App.—San Antonio 2015, no pet.); *Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

But the primary purpose of bail is to reasonably assure the presence of the defendant in court for trial of the charged offense. *See* Tex. Code Crim. Proc. Ann. art. 17.01; *Rodriguez*, 595 S.W.2d at 550; *Ex Parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). "[A] bail that cannot be satisfied has the potential to displace the presumption of innocence." *Ex parte Briscoe*, No. 02-15-00223-CR, 2015 WL 5893470, at *3 (Tex. App.—Fort Worth Oct. 8, 2015, no pet.) (mem. op., not designated for publication).

### III.  ABUSE-OF-DISCRETION REVIEW

#### A.  CONSIDERATION OF WICHITA COUNTY'S RECOMMENDED BAIL AMOUNTS

We first need to address an evidentiary issue.  The State asserts that we cannot consider Wichita County's adopted and recommended felony bail amounts (the recommendations) because the trial court excluded it at the second application hearing and because Taylor does not argue that this exclusion was an abuse of discretion.  At the second application hearing, Taylor unsuccessfully sought to admit the recommendations as an exhibit:

> [Taylor's counsel]: We would request that the Court admit Defendant's Exhibit 2.  It is the recommended felony bail amounts that were previously filed for Wichita County.
>
> [The prosecutor]: Judge, I'm going to object to Defendant's Exhibit 2.  I don't believe some of this should be properly considered at this hearing.  I can provide the Court some case law to substantiate that as well if necessary.
>
> THE COURT: I'm aware of those.  I'll sustain the objection.  I am aware.  I think I drafted those.

9

[Taylor's counsel]:  Yes, Your Honor.  Your Honor, I need to admit Defendant's Exhibit 2 for record purposes.

THE COURT:  Okay.  It's admitted for record purposes only.

Although the trial court did not admit the recommendations as an exhibit, it is not as clear whether it was or could have been part of the trial court's determination of Taylor's application.  The trial judge twice stated that he was "aware" of the recommendations, and the schedule itself shows that the trial judge was one of the three Wichita County, district-court judges who had adopted the recommendations in 2016.

Appellate courts, including this court, routinely consider such recommendations as part of their review of the nature and circumstances of the charged offense even where it does not appear that the recommendations were admitted as an exhibit at the application hearing.  *See, e.g.*, *Ex parte Hernandez*, Nos. 14-18-00955, 14-18-00957 to 00962-CR, 2019 WL 1388640, at *6 (Tex. App.—Houston [14th Dist.] Mar. 28, 2019, no pet.) (per curiam) (mem. op., not designated for publication) (citing *Ex parte Melartin*, 464 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2015, no pet.)); *Ex parte Craven*, No. 02-18-00110-CR, 2018 WL 3060199, at *1 (Tex. App.—Fort Worth June 21, 2018, no pet.) (mem. op., not designated for publication); *Ex parte Goodson*, No. 01-15-00288-CR, 2015 WL 1868771, at *5 (Tex. App.—Houston [1st Dist.] Apr. 21, 2015, no pet.) (per curiam) (mem. op., not

10

designated for publication) (citing *Ex parte Bogia*, 56 S.W.3d 835, 838 (Tex. App.—Houston [1st Dist.] 2001, no pet.)); *cf. Cook*, 2019 WL 2323643, at \*2.

However, this court has previously also held that Denton County's bail recommendations were only helpful to magistrates when initially setting bail and were "of little or no use" at a later hearing reviewing the set amount, which excluded those recommendations from this court's review. *Ex parte Shahwan*, No. 02-14-0032-CR, 2014 WL 3029109, at \*8 (Tex. App.—Fort Worth July 3, 2014, no pet.) (mem. op., not designated for publication). To support this holding, we relied on *Ex parte Garcia*, 100 S.W.3d 243, 246–47 (Tex. App.—San Antonio 2001, no pet.). The *Garcia* court did recognize that a trial court reviewing a magistrate's set bail amount "should not" use the bail recommendations; but, the *Garcia* court went further and recognized that such recommendations were useful as "a guide which in a general way includes certain factors, particularly the nature of the crime, its severity, and whether it was committed against a specially protected class." *Id.* Accordingly, our holding in *Shahwan* should have recognized this permissible use of such recommendations and the fact that a county's bail recommendations necessarily would have encompassed the considerations delineated in Article 17.15 and *Rubac*. To the extent *Shahwan* did not do so, we disapprove of that holding. Further, the Wichita County order adopting the recommendations stated that they were to be "use[d]" by "all judges and magistrates in Wichita County"; thus, their utility is not limited to magistrate judges or the initial setting of bail.

We conclude that we may consider the recommendations as part of our review of the trial court's exercise of its discretion, especially of any review of the nature and circumstances of the offense. An appropriate exercise of discretion is one that refers to guiding rules and principles. *See Ex parte Peyton*, No. 02-16-00029-CR, 2016 WL 2586698, at *3 (Tex. App.—Fort Worth May 5, 2016) (mem. op., not designated for publication), *pet. dism'd*, No. PD-0677-16, 2017 WL 1089960 (Tex. Crim. App. Mar. 22, 2017) (per curiam) (not designated for publication). Here, the recommendations were guides that informed the trial court's discretion even though not formally introduced as an exhibit. Indeed, the trial judge stated that he was aware of and had been one of the district judges that had approved the recommendations. And we recognize that the rules of evidence do not apply to certain "bail proceedings," which blunts the State's implicit reliance on the evidentiary admissibility and preservation provisions in an attempt to exclude the recommendations from our consideration. *See* Tex. R. Evid. 101(e)(3)(C).

Even though we conclude that we may consider the recommendations as a guide, we recognize that they are not conclusive as each case is extremely fact specific. However, the Wichita County guidelines are "some indication of the propriety of bail amounts for various types of offenses, just as case law arising from other counties is." *Ex parte Donaldson*, Nos. 14-16-00091 to 00093-CR, 2016 WL 4254127, at *4 (Tex. App.—Houston [14th Dist.] Aug. 11, 2016, no pet.) (per curiam) (mem. op., not designated for publication).

### B. APPLICATION OF FRAMEWORK TO ADDUCED FACTS

### 1. Nature and Circumstances of the Charged Offense

It is appropriate to consider the nature of the offense and circumstances when setting the amount of pretrial bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(3); *Ex parte Davila*, 623 S.W.2d 408, 409 n.2 (Tex. Crim. App. [Panel Op.] 1981). And when considering the nature of the offense, the punishment permitted by law may be considered. *See Ex parte Clark*, 537 S.W.2d 40, 42 (Tex. Crim. App. 1976).

In this case, Taylor is charged with the first-degree felony offense of aggravated robbery, which carries a possible sentence of "imprisonment . . . for life or for any term of not more than 99 years or less than 5 years" along with "a fine not to exceed $10,000." Tex. Penal Code Ann. § 12.32; *see id.* § 29.03(b). The charged aggravated robbery resulted in serious bodily injury to Singleton after he was shot. In short, this is a serious and violent offense with the possibility of a lengthy prison sentence.

The Wichita County recommendations suggest a $25,000 bail amount for this degree of offense based on the fact that Taylor does not have a prior conviction. We find it notable that only capital murder warrants a $500,000 bail in these recommendations. Although the nature of the charged offense and the circumstances stated in the warrant affidavit[4] support the trial court's determination to set bail in a high amount, that amount may not be unreasonable. *Peyton*, 2016 WL 2586698, at *5.

---

[4]Other than the affidavit facts and the fact that Singleton was hospitalized, no other facts of the offense were adduced at the first or second application hearing.

And while the recommendations are not conclusive and each bail amount must take into account the facts of each case, there was no evidence to justify a deviation that was twenty times more than the district judges' recommendations. *See Cook*, 2019 WL 2323643, at *4; *cf. Craven*, 2018 WL 3060199, at *1; *Melartin*, 464 S.W.3d at 793. This extreme deviation indicates that the amount is oppressive. *See Cook*, 2019 WL 2323643, at *4; *Bogia*, 56 S.W.3d at 838.

## 2. Ability to Make Bail

Taylor's ability to satisfy a bond is another factor to be considered by the court, although it is not dispositive. *See* Tex. Code Crim. Proc. Ann. art. 17.15(4); *Ex parte Jones*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991). Eric testified that he had contacted a bail bondsman when Taylor's bail was set at $1,000,000 and that the family could not meet the $80,000 bond. And in the six months since Taylor's bail had been reduced, Taylor and his family had been unable to satisfy a $500,000 bail amount.

Eric had paid an attorney $6,000 to represent Taylor and had agreed to pay an additional $3,000 to satisfy counsel's $9,000 retainer. Taylor had a job waiting with Eric's lawn-service business if he were released even though the work was seasonal and Eric was fearful that Taylor would be the victim of retaliation if he were to immediately start work. Eric testified that Taylor's assets, if sold, would bring less than $10,000.

14

The State now argues that because the trial court could have determined that Taylor could make a $500,000 bail if he were to exhaust his and his family's funds, Taylor failed to meet his burden of proof on this consideration. Although Taylor and Eric had some ability to pay as shown by Eric's retaining counsel for Taylor and Eric's employment, the evidence was undisputed that the family could not afford a bond sufficient to satisfy a $500,000 bail amount. Although the evidence does not show the trial court abused its discretion by setting a high bail amount to ensure Taylor's presence at trial (indeed, Taylor suggests a bail amount of between $50,000 to $75,000), the evidence of his inability to make bail does indicate that the amount itself is unreasonable, displacing the presumption of innocence and serving as an instrument of oppression. *See Peyton*, 2016 WL 2586698, at *4; *Briscoe*, 2015 WL 5893470, at *3; *Bogia*, 56 S.W.3d at 840.

### 3. Family and Community Ties, Work Record, and Prior Criminal History

Taylor had lived in Wichita Falls for four years before his arrest and graduated from high school there. Many members of his family also live in Wichita Falls in close proximity to one another. Several of those family members attended the bail proceedings to support Taylor. If released, Taylor would live with his retired paternal grandfather who would be able to more closely supervise Taylor as required by the release conditions. Taylor had attended cosmetology school and worked in Wichita County.

15

The State contends that because Eric has been convicted of two felony possession offenses, because D'Angelo "was arrested for an incident in which he was drinking alcohol and driving," and because Taylor's cousin was arrested for the charged aggravated robbery along with Taylor and Lopez, the fact that Taylor's family lives in Wichita Falls actually supports a high bail amount. However, the evidence does not show that D'Angelo was arrested for driving while intoxicated: Eric testified only that there was an "incident" involving "driving or something . . . drinking or something like that, misdemeanor." Taylor would be living with neither Eric nor D'Angelo if released, and it appears that Taylor's cousin remains in jail.

The point of looking at a defendant's community and family ties is to assay the likelihood that he will appear for trial. *See* Tex. Code Crim. Proc. Ann. art. 17.01. Here, the length of Taylor's residence and the depth of his family ties in the area give him "an incentive to remain despite the possibility of conviction and sentence," indicating that a high bail amount was an abuse of discretion. *Peyton*, 2016 WL 2586698, at \*5; *see Cook*, 2019 WL 2323643, at \*4; *Briscoe*, 2015 WL 5893470, at \*5; *cf. Maldonado*, 999 S.W.2d at 97; *Brown*, 959 S.W.2d at 372–73.

The State's attempts to show that Taylor routinely traveled to California before his arrest (and, therefore, would flee if released) were just that: attempts. In response to the State's questions, Eric denied that Taylor had family in or had traveled to California, and the State proffered no further evidence in support of its assertion. Although the trial court could have found Eric's testimony on this point to be not

16

credible, the trial court could not have credited that Taylor had travelled to California or had family ties there, making him a flight risk, based on no evidence. *See Peterson*, 117 S.W.3d at 819 & n.67; *Phuong Anh*, 300 S.W.3d at 327.

The State further argues that Taylor has a "history of committing charged and uncharged crimes," which supports the $500,000 bail amount. Although Taylor was charged as a juvenile with robbery, he successfully served a community-supervision term, and the charge was dismissed. Taylor has no other documented criminal history. The State argues that because Eric could not definitively rule out the possibility that Taylor was a drug dealer and because Eric admitted Taylor "probably" smoked marijuana, this criminal history supported the trial court's bail determination. We disagree that a dismissed juvenile charge and the bare possibility that Taylor could be involved with drugs equates to evidence of a criminal history supporting a determination that $500,000 was a reasonable bail amount. *See, e.g., Cook*, 2019 WL 2323643, at \*5 (holding $750,000 bail for murder charge in Wichita County excessive partially based on fact defendant was nineteen and "whose only criminal history is a marijuana charge as a juvenile"); *cf. Ex parte Piceno*, No. 02-13-00421-CR, 2014 WL 2611191, at \*5 (Tex. App.—Fort Worth June 12, 2014, no pet.) (mem. op., not designated for publication) (holding in case out of Wichita County that "[t]here is no evidence of any aggravating factors to suggest that Appellant presents any danger to the complainant, and apart from Appellant's [significant juvenile and adult] criminal history . . . there is little, if any, evidence that he poses a threat to the safety of the

community if allowed to make bail"). The evidence on this issue, even viewed in the light most favorable to the trial court's determination and considering the violent nature of the charged offense, does not indicate that Taylor would be a flight risk such that $500,000 would be considered reasonable and not oppressive. *See Cook*, 2019 WL 2323643, at *5; *Peyton*, 2016 WL 2586698, at *4.

### 4. Future Safety of Singleton and the Community

The future safety of Singleton and the community are to be considered in determining the appropriateness of a set bail amount. Tex. Code Crim. Proc. Ann. art. 17.15(5). The State again points to Eric's testimony that Taylor possibly could be a drug dealer and "probably" smokes marijuana to show Taylor would be a danger to the community. The State also relies on Eric's fear of retaliation against Taylor to insert the possibility that "Taylor's actions were a result of a bad drug deal or a gang rivalry."

Eric testified that Singleton, not Taylor, was rumored to have been a gang member. No evidence supports a finding that Taylor is a gang member, and the trial court cannot make such a finding, implied or otherwise, in the absence of such evidence. And while we agree that the nature of the charged offense indicates that a high bail amount was warranted to protect the community, the trial court also placed several conditions on Taylor's release such as wearing a GPS monitor; being barred from contacting Lopez, Singleton, or his cousin; and only being allowed in the homes of Eric, his brother, his uncle, or his grandfather. These conditions protected the

18

community and further indicate that the $500,000 bail amount was unreasonable and oppressive. *See Cook*, 2019 WL 2323643, at *4; *Bogia*, 56 S.W.3d at 840.

### 5. Similar Cases

The State also points to bail amounts in similar cases that have been upheld to argue that $500,000 is not excessive in this case. The State cites to seven appellate decisions in which bail amounts ranging from $500,000 to $1,000,000 for first degree felonies, some nonviolent, were upheld. *See, e.g.*, *Ex parte Pittman*, Nos. 09-18-00269 to 00270-CR, 2018 WL 5810340, at *2 (Tex. App.—Beaumont Nov. 7, 2018, no pet.) (mem. op., not designated for publication); *Ex parte Garner*, No. 10-18-00129-CR, 2018 WL 3469834, at *5 (Tex. App.—Waco July 18, 2018, no pet.) (mem. op., not designated for publication); *Ex parte Murray*, Nos. 02-13-00151 to 00153-CR, 2013 WL 5425312, at *7–8 (Tex. App.—Fort Worth Sept. 26, 2013, no pet.) (per curiam) (mem. op., not designated for publication). Although we may look at such comparator cases, we have recognized that doing so is of limited value because bail-reduction cases are highly fact specific. *See Cook*, 2019 WL 2323643, at *5 (discussing *Murray*, 2013 WL 5425312, at *4). Indeed, we have found cases where $500,000, $350,000, $250,000, $150,000, and $100,000 were held to be excessive for an aggravated-robbery charge. *Ex parte Ivey*, 594 S.W.2d 98, 98–100 (Tex. Crim. App. [Panel Op.] 1980); *Hernandez*, 2019 WL 1388640, at *1, *6–7; *Ex parte Everage*, Nos. 03-17-00879 to 00881-CR, 2018 WL 1788795, at *1, *9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication); *Nguyen v. State*, 881 S.W.2d

19

141, 142 (Tex. App.—Houston [1st Dist.] 1994, no pet.); *Ex parte Ruiz*, 692 S.W.2d 192, 193 (Tex. App.—Austin 1985, no pet.). But using such comparisons as a general guide as we did with the recommendations, we recognize that in some cases, $1,000,000 has been held not excessive; in others, amounts less than the bail set here were found to be excessive. *See Donaldson*, 2016 WL 4254127, at *4.

## C. SUMMARY

Other than the nature of the charged offense, the factors and considerations that the trial court and this court are to consider show that the $500,000 bail amount exceeded any attempt to reasonably assure that Taylor would appear for trial and instead was an instrument of oppression. Taylor was a young man who had lived in Wichita Falls for the prior four years, and many of his family members lived there as well. Many of these family members were willing and able to help Taylor meet the terms of the conditions of release, and Taylor would live with his grandfather who would be able to provide Taylor with a stable environment. Taylor was unable to satisfy a $500,000 bail bond, but he suggested that he could meet one in the range of $50,000 to $75,000. Taylor had no prior criminal history other than a juvenile robbery charge that had been dismissed after Taylor successfully served a community-supervision term. Taylor had worked in Wichita County previously and would be able to work if released unless such work would not be safe for Taylor based on a danger of retaliation from Singleton. Taylor would be under restrictive conditions of release that would further ensure the safety of the community and Taylor's appearance for

trial. The facts of the offense were not developed at either application hearing, and no "unusual circumstances" justify a twenty-fold deviation from the recommendations. *Bogia*, 56 S.W.3d at 840.

The State, in urging this court to affirm, vehemently argues that we must completely defer to the trial court's denial and assume that any implied credibility determinations support this ultimate ruling. In doing so, the State repeatedly declares that the trial court "could have" discredited certain portions of Eric's testimony and credited the opposite assertion or "could have" found facts not supported by the record.[5] The court of criminal appeals, albeit in an unpublished decision, has rejected this extension of the abuse-of-discretion standard in the bail-appeal context:

> [W]e agree with Appellant that [the court of appeals] failed to measure the ruling of the habeas court against the relevant criteria. For example, the court stated that "the weight to be given [to] particular testimony *and of its bearing on the factors for setting bail were determinations to be made by the trial court.*" It also noted that the credibility and weight determinations made by the habeas judge "*may* properly have had a bearing on the court's evaluation of the statutory and common law factors for setting bail . . . ." If this were the extent of an appellate court's review for an abuse of discretion, rulings of habeas courts would be almost completely insulated from review and bail-reduction appeals would be meaningless. Habeas courts determine the bearing of the evidence on the relevant bail criteria *only* in the first instance. On appellate review, **it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion**.

---

[5]One example: "[T]he trial court also heard, and could have reasonably considered in setting the amount of Taylor's bail, that he has out-of-town ties that make him a flight risk."

21

*Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313, at *2 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication) (bold emphasis added) (citations omitted); *see also* 41 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice & Procedure* § 21:58 (discussing *Dixon*). Accordingly, we are to review the trial court's exercise of its discretion in the context of the appropriate factors and considerations, which the trial court also was required to consider. And although we defer to the trial court's factual findings, those findings must be based on some evidence. We cannot defer to an unsupported, implicit fact finding. In short, we cannot look at the absence of evidence and assume, as the State seems to suggest, that the trial court must have made a credibility determination that supported its ultimate ruling. Such assumptions go beyond deference into blind acceptance.

## IV.  CONCLUSION AND HOLDING

We agree that the crime Taylor is charged with is very serious, involving a deadly weapon and serious bodily injury, and carries the possibility of a lengthy sentence. However, the appropriate factors and considerations, including the constitutional rights guaranteed an accused, indicate that Taylor would not be a flight risk and that safeguards have been put into place to reasonably assure his attendance at trial. *See Ex parte McDonald*, 852 S.W.2d 730, 735–36 (Tex. App.—San Antonio 1993, no pet.) (per curiam). This is the purpose of bail. To go further turns bail into an instrument of oppression. The amount of bail here—$500,000—was unsupported by the evidence and was excessive. By failing to reduce Taylor's $500,000 bail under

these facts and in the absence of unusual circumstances, the trial court abused its discretion. *See, e.g.*, *Ludwig v. State*, 812 S.W.2d 323, 324–25 (Tex. Crim. App. 1991) (per curiam); *Robertson v. State*, Nos. 12-05-00288 to 00289-CR, 2006 WL 300494, at *3–6 (Tex. App.—Tyler Feb. 8, 2006, pet. ref'd) (mem. op. on reh'g, not designated for publication).

Accordingly, we reverse the trial court's order denying Taylor's habeas-corpus application and remand this case to the trial court (1) to set a reasonable bail; (2) to determine if any additional conditions should be imposed to ensure Taylor's presence at trial; and (3) to allow the State and Taylor an opportunity to present any new evidence or argument that the trial court deems appropriate to assist it in determining reasonable bail and any additional release conditions. *See* Tex. R. App. P. 31.3; *Cook*, 2019 WL 2323643, at *5. We direct the clerk to immediately issue our mandate. *See* Tex. R. App. P. 18.6; *Hernandez*, 2019 WL 1388640, at *7; *Melartin*, 464 S.W.3d at 797.

Per Curiam

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 23, 2020