**Affirmed and Memorandum Opinion filed December 29, 2022.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-22-00573-CR**
**NO. 14-22-00574-CR**

## EX PARTE KEITH BUFORD

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1770082, 1770083**

## MEMORANDUM OPINION

Appellant, Keith Buford, brings this appeal from the trial court's order on his application for writ of habeas corpus. Appellant was charged with two third degree felonies: (1) repeated violation of a protective order (RVPO) and (2) failure to comply with sex offender registration requirements (FTC). *See* Tex. Penal Code Ann. §§ 25.072(a); 25.07(a); Tex. Code Crim. Proc. Ann. art. 62.102(a). A Harris County Magistrate set bail in the amount of $150,000 for the RVPO and $75,000 for the FTC. Appellant filed a pretrial application for a writ of habeas corpus in

both cases, alleging the bail amounts render him unlawfully restrained. After a hearing on appellant's application, the trial court denied appellant's request to reduce his bond. This appeal followed.

## BACKGROUND

On September 10, 2021, a Washington State judge issued a protective order against appellant for the protection of appellant's wife. The Washington court entered the order based upon a finding that appellant had been "charged with, arrested for, or convicted of a domestic violence offense." On October 19, 2021, appellant was arrested for violating the protective order, a misdemeanor offense. Two days later, appellant posted a $25,000 bond and was released from jail.

On December 26, 2021, appellant allegedly violated the protective order for a second time. Appellant was arrested in Harris County and charged with repeated violation of a protective order, a third-degree felony. *See* Tex. Penal Code Ann. § 25.072(e). Upon this arrest, appellant was also charged with failure to comply with sex-offender registration requirements, another third-degree felony offense.[1] *See* Tex. Code Crim. Proc. Ann. art. 62.102(a)(2). These two third-degree felony offenses are the charges underlying appellant's application for writ of habeas corpus.

According to the trial court's findings of fact, the magistrate initially denied appellant's request for bond, noting appellant's "stalking behavior." The magistrate further noted that appellant had a charge for assault of a family member pending in Travis County and a robbery charge pending in Washington State. Additionally, the magistrate took notice of outstanding warrants in Washington State for failing to appear. The magistrate ultimately decided to allow for bond in the amount of

---

[1] Appellant is required to register as a sex-offender resulting from a California State felony offense of sexual battery.

$150,000 for RVPO and $75,000 for the FTC.

On April 4, 2022, appellant filed his application for writ of habeas in both matters. On June 21, 2022, the trial court held a hearing on the application. Appellant presented three witnesses at the habeas hearing: his brother-in-law, his father, and a friend.

### *Brother-in-Law – Richard Glover*

Appellant's brother-in-law, Richard Glover, testified that he did not believe appellant could afford to the bond amounts because appellant was unemployed. Moreover, Glover explained he would be unable to financially assist due to his own financial hardship. Glover stated that he believed appellant would "absolutely" appear for his court date and that appellant is not a danger to the community. Glover lives out of state and has not seen appellant in two or three years.

### *Father – Keith Buford, Sr.*

Buford Sr. testified that he could not help appellant in paying his bonds because he was financially struggling. He explained that the payment plans offered by the bonding companies were "ridiculous." Burford Sr. stated that appellant could "absolutely not" afford the current bond amounts. According to Buford Sr., appellant was employed in the construction and roofing trade before he was arrested. Buford Sr. testified that appellant would be able to return to that job upon release. Buford Sr. explained that he lives in Washington and most of the family is either in California or Texas. Buford Sr. believes that his church will financially assist him in traveling to Texas if appellant is released so that he can make sure his son attends all hearings. Buford stated that his son is not violent. When asked whether he knew how appellant afforded the first $25,000 bond, Buford Sr. replied

3

he was not aware appellant had previously posted a bond.

### *Friend – Casey Jenkins*

Casey Jenkins, a friend of 30 years, described appellant as funny, goofy, caring, fun-loving, and hardworking. Jenkins was only aware that there was one bond that needed to be posted. Jenkins testified that she could not help in paying either of the bond amounts. Jenkins believes that appellant will appear for all his court hearings and that appellant is not a danger to the community. Jenkins was unaware appellant had a previous felony conviction for aggravated assault in 2018, nor that he had a 2014 conviction of assault on a family member. Jenkins lives in California, but said she would support appellant however she could, including driving to Texas.

The State entered the Washington State protective order and an October 20, 2021 affidavit of financial condition into evidence. That affidavit of financial condition was submitted in connection with the October 19, 2021 charge. The October 2021 affidavit listed appellant as supporting two minor children. His job was listed as a full-time mechanic earning $3,500 a month. In the affidavit, appellant averred that he had been renting a home for two months and that he had been at his previous address for three years.

The court took judicial notice of the underlying records in each matter. In doing so, the court noted that a December 27, 2021 affidavit of financial assistance listed appellant living at a hotel for a month and working as a Door Dash delivery driver earning $800 a month. The court further noted that it was taking into consideration appellant's public safety report. That report reflected: (1) a June 2021 pending charge of assault on a family member with a previous conviction out of Travis County; (2) an October 2018 conviction of aggravated assault with a deadly weapon; (3) an October 2014 conviction of assault of a family member

4

twice within 12 months; and (4) an August 2014 arrest for assault of a family member and a conviction for failure to identify. The court also noted that there is "apparently" an open robbery charge in the State of Washington for which there are warrants outstanding because of his failure to appear.

After both sides presented closing arguments, the court declined to reduce appellant's bond amounts and found the current amounts to be appropriate.

## ANALYSIS

The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 11. We review a challenge to the excessiveness of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision if it falls within the zone of reasonable disagreement. *See Ex parte Castillo–Lorente*, 420 S.W.3d 884, 887 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The amount of bail required in any case is within the discretion of the trial court subject to the following rules:

1. The bail shall be sufficiently high to give reasonable assurance of compliance with the undertaking.

2. The power to require bail is not to be so used as an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. art. 17.15.

5

In addition to these rules, case law provides that courts may consider the following set of factors: (l) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; (7) the aggravating circumstances alleged to have been involved in the charged offense; and (8) whether the defendant is a citizen of the United States. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Rodriguez*, 595 S.W.2d 549, 550 n. 2 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Melartin*, 464 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

**A. Nature and circumstances of alleged offense**

When assessing the reasonableness of bail, the Court of Criminal Appeals has instructed that the "primary factors" are the punishments that can be imposed and the nature of the offenses. *See Rubac*, 611 S.W.2d at 849. When the offenses charged are serious and involved potentially lengthy sentences, a defendant may have a strong incentive to flee the jurisdiction and bail must be set sufficiently high enough to secure the defendant's presence at trial. *Ex parte Castillo-Lorente*, 420 S.W.3d 884, 888 (Tex. App.—Houston [14th Dist.] 2014, no pet.). But, a defendant is entitled to a presumption of innocence on all charges. *Ex parte Melartin*, 464 S.W.3d 789, 793 (Tex. App.—Houston [14th Dist.] 2015, no pet.) A trial court must balance that presumption with the State's interest in assuring the defendant's appearance for trial. *Ex parte Robles*, 612 S.W.3d 142, 147 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Appellant is charged with two third-degree felonies. Each third-degree felony charge carries a range of two to ten years in prison. *See* Tex. Penal Code Ann. § 12.34. However, because of appellant's criminal history, the punishments

may be enhanced to 25 to 99 years or life in prison. *See* Tex. Penal Code Ann. § 12.42(d). These lengthy sentences combined with appellant's out-of-state support network provide incentive to flee. Because the charges and their consequences in the event of conviction are so serious, the trial court could have reasonably determined that the bail amounts set by the magistrate were reasonable.

Moreover, appellant is a repeat offender. He allegedly violated the same protective order twice within 2 months. He has a history of both family violence and failing to appear. The trial court could have reasonably concluded that the bond amounts would prevent appellant from falling into his old patterns.

**B. Sufficiently high to assure appearance but not oppress**

Bail needs to be sufficiently high to give reasonable assurance that the defendant will appear. When bail is set so high that a person cannot realistically pay it, however, the trial court essentially "displaces the presumption of innocence and replaces it with a guaranteed trial appearance." *Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Appellant did not provide evidence of any ties to Harris County. As of his most recent affidavit of financial conditions, appellant was living in a hotel and working as an independent contractor with Door Dash. Appellant's parents live in Washington, and he has other friends and family in California. Buford Sr. testified that appellant has sisters in Arlington, Texas, but no other evidence was presented tying appellant to Harris County or even the State of Texas. The trial court could have reasonably considered appellant's lack of local ties in denying appellant's request to decrease the bond amount. *See Milner v. State*, 263 S.W.3d 146, 150 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (acknowledging a higher bail amount could be warranted by the fact that the accused did not "have a reason to remain" in the county he was being tried in).

## C. Future safety of the victims and the community

The trial court must also consider the future safety of the victim of the alleged offenses and the community in setting appellant's bail amounts. *See* Tex. Code Crim. Proc. Ann. art. 17.15(5). A defendant's criminal history must be evaluated to determine whether he presents a danger to the community. *Ex parte Ramirez-Hernandez*, 642 S.W.3d 907, 918 (Tex. App.—San Antonio 2022, no pet.). The protective order was based on a finding of domestic violence. Appellant is alleged to have violated the protective order twice in a short period of time. Additionally, appellant has a criminal history of domestic assault. The trial court was within its reasonable discretion in concluding the bond amounts were necessary to protect the complainant. *Robles*, 612 S.W.3d at 148-49 (explaining that repeated commission of similar offenses "evidenced sufficient danger to the community to deny appellant's request to lower bail").

## D. Ability to make bail

To demonstrate inability to make bail, a defendant generally must establish his and his family's funds have been exhausted. *Ex parte Dupuy*, 498 S.W.3d 220, 234–35 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The accused's ability to make bail is only one factor to be considered in determining the appropriate amount of bail. *Id*. "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Id*. (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)).

Buford Sr. and Glover both testified that appellant could not afford his bond, nor could they financially assist him. Appellant's most recent affidavit of financial conditions also presented a bleak picture. There was evidence, however, that

appellant had recently posted a $25,000 bond. None of appellant's witnesses were aware of how appellant afforded to post that bond. While this could be evidence of a hidden source of income, it could also be viewed as a large expense serving to render appellant financially bereft. In sum, this factor weighs in favor of a reduced bond amount, but is only one factor in the balance.

### E. *Rubac* Factors

***Appellant's work record.*** Appellant worked as an independent contractor for Door Dash for the two months preceding his incarceration. Buford Sr. testified appellant worked in the construction field and would have employment upon his release. This testimony, however, was contradicted by appellant's own affidavit of financial condition.

***Appellant's family and community ties.*** As discussed above, appellant has little to no familial or community ties with Harris County.

***Length of appellant's residency.*** The record does not reflect how long appellant has resided in Harris County.

***Appellant's prior criminal record.*** Appellant has a significant criminal record, some charges for which he is still wanted.

***Appellant's other bonds.*** Appellant allegedly committed the current offenses just two months after posting bond in October 2021. Appellant is also wanted in Washington State and Travis County.

***Aggravating circumstances in the charged offense.*** Appellant is a habitual domestic offender and the charged offense is for violation of protection order protecting appellant's wife.

9

## CONCLUSION

Having considered all of the pertinent factors, we conclude appellant has not shown the trial court abused its discretion in denying appellant's application for writ of habeas.

PER CURIAM

Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.
Do Not Publish — Tex. R. App. P. 47.2(b)