**Ex Parte Jontae Jermaine PRELOW.**

No. 04–96–00037–CR.

Court of Appeals of Texas,
San Antonio.

July 17, 1996.

Sarah Alice Stafford, San Antonio, for appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for appellee.

Before RICKHOFF, HARDBERGER and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

Appéllant's motion for rehearing is granted. Our opinion issued on April 30, 1996, is withdrawn and this opinion is substituted in its place.

This is an accelerated appeal of an order granting bail reduction in a pre-trial habeas corpus. Appellant is charged with murder. He was sixteen years old at the time of the offense and has been certified to stand trial as an adult by Honorable Frank Montalvo who set bail at·$250,000. Appellant's counsel filed an application for writ of habeas corpus seeking a reduction to $8,000. The criminal magistrate granted writ and, after a brief evidentiary hearing, reduced the bail amount to $150,000 and conditioned such release

upon the imposition of electronic monitoring and drug and alcohol testing. We affirm.

## Excessive Bail

■ Appellant asserts that the $150,000 bail is excessive under the Texas Constitution and the Texas Code of Criminal Procedure. Article 1.09 of the code of criminal procedure proscribes excessive bail. TEX. CODE CRIM.PROC.ANN. art. 1.09 (Vernon 1977). The primary purpose of an appearance bond is to secure the presence of the defendant in court for the trial of the offense charged. *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex.Crim.App.1980). Bail should be set sufficiently high to give reasonable assurance that the defendant will appear at trial, but it should not be used as an instrument of oppression. *Ex parte Ivey*, 594 S.W.2d 98, 99 (Tex.Crim.App.1980); *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex.Crim.App. 1977).

■ The burden is on the person seeking a reduction to show that the bail set is excessive. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex.Crim.App.1981); *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Crim.App. 1980); *Ex parte Rodriguez*, 595 S.W.2d at 550; *Ex parte Vasquez*, 558 S.W.2d at 479.

Article 17.15 of the code of criminal procedure lists the factors to be considered in determining the appropriate amount of bail. TEX.CODE CRIM.PROC.ANN., art. 17.15 (Vernon Supp.1996); *see also Ex parte Rodriguez*, 595 S.W.2d at 550; *Ex parte Ivey*, 594 S.W.2d at 99; *Ex parte Vasquez*, 558 S.W.2d at 480. Because there is no recognized standard of review for bail reduction cases we have reviewed the evidence before the trial court in light of these same factors. Trial defense counsel, apparently realizing that these factors would be utilized, objected to the State's offer of a supplemental police report because it was confusing and suggested that the court consider the actual witness statements contained in the State's file. The court determined that the State was not required to produce the statements and relied solely on the supplemental report of Det. T.J. Britt.

*First, the bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.* The appellant has lived in San Antonio all his life. He has been raised by his maternal grandmother, his legal guardian. Appellant's mother appears at the home intermittently but apparently is not a resource for the child. Appellant's father is unaccounted for on the record. The record does not reflect that appellant has any prior adult or juvenile record. No evidence of the risk of flight was introduced and appellant's counsel emphasized that appellant remained in San Antonio during the month that this case was investigated prior to his arrest.

*Second, the power to require bail is not to be so used as to make it an instrument of oppression.* The appellant's grandmother testified that the most she could raise toward a bond was $500. Appellant is a high school dropout. No record of gainful employment was introduced. The parties stipulated that the other defendant in this case, Alex Francis, has been released on a $15,000 bond by another court.

*Third, the nature of the offense and the circumstances under which it was committed are to be considered.* Evidence of this third factor was introduced by the State in the form of Det. Britt's supplemental offense report. It contains a scant, difficult to interpret, jumble of revelations taken from the participants. Appellant was first implicated by an anonymous phone call relating that Alex Francis, Paul Johnson, and appellant were bragging that they killed Ms. Williams. The murder victim, Stephanie Williams, had witnessed another murder earlier that evening and her boyfriend had been arrested. Approximately one hour after she gave her statement to the police, the appellant and another suspect were observed by Lee Johnson firing weapons into the side of a house on Olive Street. Ms. Williams was found dead inside this house with a bullet wound to the head. Appellant then reportedly shot at the witness Johnson and James Carson who were observing appellant from their car. Carson fired back with a fully-loaded "AK" rifle modified to fire fully automatic. Johnson made his statement implicating appellant

while in custody on three attempted murder charges and an aggravated robbery.

Appellant and his companions drove to another location on Cactus Street, and they were later taken to the police station for questioning. Appellant told police that Alex Francis was still in the Cactus Street house and possessed several assault-type weapons. A SWAT team found Francis hiding under the house and recovered a cache of weapons. Some time later, the murder weapon was recovered, following another shooting incident, at the resident of Alex Francis' mother, and Alex Francis was arrested. It is difficult to determine if any weapons were seized from appellant.

The form of evidence the State chose to utilize has been criticized by this court in the past. *See Garcia v. State,* 775 S.W.2d 879, 880 (Tex.App.—San Antonio 1989, no pet.) (J. Butts). Although we have acknowledged that the rules of evidence do not apply at a bond reduction hearing, the quality of such evidence suffers from the multi-level hearsay contained in the police report and does not provide a clear picture of appellant's role in the death of the victim in this case. Trial defense counsel attempted to resolve the confusion generated by the State's tender of this convoluted report by suggesting the court read the witness statements. Since appellant carried the burden to demonstrate this bail was excessive and since only the State had the evidence available that could be considered as to the nature of the offense, it would seem only reasonable that it should be the State's burden to resolve the confusion they generated on this issue.

*Fourth, the ability to make bail is to be regarded, and proof may be taken upon this point.* Appellant's grandmother, Mrs. Samuels, earns $447 every two weeks as a custodian for the SAPD. She supports herself, appellant, another grandchild, and occasion-

ally appellant's mother. Her mortgage payment is $354 on a house valued at $35,000. The family has no car, no savings account, no other property, investments, or other source of income.

Mrs. Samuels contacted a couple of bonding companies and learned that a bond in this case would cost approximately ten per cent of the bail amount. She testified that neither she nor her grandson had any means of raising this amount. The most she could raise for a bond was $500.

*Fifth, the future safety of a victim of the alleged offense and the community shall be considered.* The victim was killed. When considering the safety of the community, however, it is apparent from the record before Magistrate Carruthers that appellant lives in an environment where assault rifles are readily available, where he and the other participants are impulsive and lethal, and shootouts frequently result.

◼ The State, however, made no effort to show that this appellant is ten times more likely to flee or to harm others in the community than his co-defendant who has been released on a $15,000 bond. The State does not offer any further justification in its brief[2] for this apparent anomaly. In the future, when the State presents no evidence on the third and fifth factors or when they present evidence that is undecipherable, we will assume they consider these factors unworthy of our attention.

In our analysis today, we place primary emphasis on the three facts that are clear from the report: (1) that Ms. Williams was murdered one hour after giving her statement to the police, (2) that appellant was seen firing into the rooms she occupied, (3) that appellant participates in creating an extremely violent environment. These factors compel us to consider the future safety of this community.

---

**2.** The State merely has argued, incorrectly, that when a reduction in the bail amount has been granted upon a habeas corpus hearing, no appeal can be heard as to the new amount until after the accused shows he has made an effort to furnish bail in that amount. *Ex parte Stembridge,* 472 S.W.2d 155, 155 (Tex.Crim.App.1971). However, appellant's counsel has properly brought to our attention the fact that the line of cases from

which *Stembridge* springs has been overruled. *See Ex parte Skinner,* 496 S.W.2d 633, 634 (Tex. Crim.App.1973) (such additional requirement would have been a "useless thing" since the record on appeal already reflects appellant's inability to make the reduced bail); *see also Ex parte Clark,* 537 S.W.2d 40, 41 n. 1 (Tex.Crim.App. 1976); *Ex parte Cevallos,* 537 S.W.2d 744, 746 (Tex.Crim.App.1976).

We are mindful that murder is a serious charge that cannot be taken lightly by the courts or law enforcement authorities who are charged with preserving public safety. We are also mindful of the rights guaranteed the appellant under the Texas Constitution, our responsibilities under the Texas Constitution, and our obligation to uphold the Texas Constitution and adhere to its principles.

Appellant's points of error are overruled and the order granting a bail reduction to $150,000 is affirmed.