**Opinion issued May 27, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-20-00841-CR**

**NO. 01-20-00842-CR**

**NO. 01-20-00843-CR**

_____

**EX PARTE MATTHEW JAMES LEACHMAN**

---

**MEMORANDUM OPINION**

---

Appellant Matthew James Leachman is facing three counts of aggravated sexual assault of a nine-year-old boy. He challenges the trial court's denial of his application for writ of habeas corpus, asserting he should have been granted a

personal bond rather than the $75,000 bond imposed for each of the three aggravated-sexual-assault-of-a-child charges.[1]  We affirm.

## Background

This case has a long and multifaceted history, much of which is not relevant to Leachman's petition.[2]  In 1999, Leachman pleaded guilty to three charges of indecency with a child, involving three different boys ranging in ages from ten to fifteen.  He was sentenced to twenty years' confinement in the Texas Department of Criminal Justice ("TDCJ") for each case and released to parole on mandatory supervision on October 1, 2020.[3]  Separately, and relevant to this case, Leachman is awaiting trial on three counts of aggravated sexual assault of a nine-year-old boy, a first-degree felony that has a punishment range of five to ninety-nine years or life.[4]  TEX. PENAL CODE §§ 12.32, 22.021(a)(1)(B).  On October 14, 2020,

---

[1]  The underlying case is *State v. Leachman*, Cause Nos. 1694181, 1694180, and 1694182, pending in the 248th District Court of Harris County, Texas, the Honorable Hilary Unger presiding.

[2]  *See Ex parte Leachman*, 554 S.W.3d 730, 733-36 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (summarizing procedural history of Leachman's criminal convictions and appeals); *Leachman v. Stephens*, No. 4:11-CV-212, 2015 WL 5730378, at *1 (S.D. Tex. Sept. 30, 2015) (mem. and order, not designated for publication) (same).

[3]  He was not actually released from custody because of the three pending charges that are the subject of this appeal.

[4]  In 1998, Leachman was indicted on three counts of aggravated sexual assault of a nine-year-old boy.  Leachman was tried and convicted of one of the charges in 1998 (under Cause No. 786224) and sentenced to forty years' imprisonment.  After exhausting all direct appeals and applications for writ of habeas corpus through the state, Leachman filed a federal habeas corpus petition based on the

2

Leachman filed an application for writ of habeas corpus, asserting that no bond had been set for the three pending cases. He asked to be released on a personal bond and requested a hearing on his application. The court initially fixed bail at $100,000 per charge pending the hearing on the writ. The court conducted a hearing on the writ application and reduced bail to $75,000 for each case. During the hearing, the trial court judge explained that in setting the bond, she considered, among other things:

> The seriousness of the crime, the nature of the offense and circumstances, [Leachman's] past record, [his] ties to the community, risk to public safety, potential flight risk.

Leachman asserts the trial court abused its discretion by setting a $75,000 bond for each of the three cases rather than releasing him on personal bond,[5] and in

---

denial of his Sixth Amendment right to self-representation. A federal court conditionally granted Leachman's petition in 2015, based on his self-representation claim, ordering his release unless the State moved to grant him a new trial for his conviction in Cause No. 786224. *Leachman v. Gonzalez*, No. 4:19-CV-2943, 2020 WL 6152537, at *1 (S.D. Tex. Oct. 20, 2020). The State timely moved for a new trial in that cause, subsequently severing the original indictment into separate cause numbers. *Id.* at *2. These are the charges that are subject of Leachman's present petition.

[5] Leachman does not ask this Court to lower the amount of the bond; he only seeks a personal bond. He states in his brief:

> The Court should take note that the problem is not the bail *amount* but rather the requirement of a bail bond rather than a personal bond. . . . My notice of appeal . . . may not have made clear that setting a $75,000 bail amount was objectionable only *in combination with* the denial of my request for personal bond, but there were no misunderstandings at the writ hearing. . . . [A]s the hearing made clear, my request was not that the trial court *reduce* bail but rather allow a personal bond.

excluding evidence relevant to the issue of setting bond during the bond hearing.[6] The State contends the denial of personal bond is discretionary and not reviewable. In the alternative, the State asserts the trial court did not abuse its discretion in setting the $75,000 bonds and that Leachman was not harmed because the trial court took notice of the evidence Leachman contends the court improperly excluded during the bond hearing.

## Standard of Review

We review a trial court's decision on the grant or denial of habeas corpus relief for abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *see Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (same). When a habeas appeal pertains to pretrial bail, we "measure the trial court's ruling against the relevant criteria by which the ruling was made." *Id.* at 593; *see also Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313, at *2 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication) ("Habeas courts determine the bearing of the

---

(Emphasis in original.) Leachman asked the trial court during the writ hearing "to grant [him] a personal bond."

[6] Leachman also initially appealed the bond condition that he be denied access to the internet. During a second writ hearing, however, the judge agreed to allow Leachman twenty-five hours per week of internet time with monitoring software, and Leachman agreed to the conditions. Therefore, that portion of his petition is moot.

evidence on the relevant bail criteria *only* in the first instance. On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion.") (emphasis in original) (citing TEX. CODE CRIM. PROC. 17.15; TEX. CONST. art. 1, §11-11a, 13).

This Court will only disturb the trial court's ruling if it is "outside the zone of reasonable disagreement." *Ex parte Nimnicht*, 467 S.W.3d 64, 66 (Tex. App.— San Antonio 2015, no pet.). "The mere fact that a trial court may decide a matter within its discretion differently than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–242 (Tex.1985)). It is the appellant's burden of proof to show that the trial court abused its discretion in its bail determination. *Ex parte Nimnicht*, 467 S.W.3d at 66 (citing *Rubac*, 611 S.W.2d at 849).

**Applicable Law**

Article 17.03 of the Texas Code of Criminal Procedure provides that "a magistrate may, in his or her discretion, release the defendant on personal bond without sureties or other security." TEX. CODE CRIM. PRO. art. 17.03(a). As noted above, "[t]he granting of a personal bond is a matter within the discretion of the

5

court before whom the case is pending." *Ex parte Trillo*, 540 S.W.2d 728, 732 (Tex. Crim. App. 1976), *overruled on other grounds by Aguilar v. State*, 621 S.W.2d 781 (Tex. Crim. App. 1981).

Texas Code of Criminal Procedure art. 17.15 enumerates rules for setting a defendant's amount of bail:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2. The power to require bail is not to be so used as to make it an instrument of oppression.
3. The nature of the offense and the circumstances under which it was committed are to be considered.
4. The ability to make bail is to be regarded, and proof may be taken upon this point.
5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PRO. art. 17.15. Trial courts also consider these rules in considering whether to grant personal bond to a defendant. In *Ex parte Nimnicht*, for example, the defendant sought "reduction of bail, particularly release on a personal bond." 467 S.W.3d at 66. In considering whether the trial court abused its discretion in denying personal bond and setting bond at $7,500, the court considered the five rules in article 17.15. *Id.* at 67–70; *see also Ex parte Perez*, Nos. 02-10-00450-CR, 02-10-00451-CR, 2011 WL 255292, at *1–4 (Tex. App.— Fort Worth Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (considering article 17.15's rules when defendant requested release on personal

6

bond or, alternatively a reduction in bail); *Ex parte Barnes*, No. 2-10-260-CR, 2010 WL 3433800, at *1-3 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op., not designated for publication) (same); *Ex parte Gomez-Herrada*, No. 07-20-00177-CR, 2020 WL 7214293, at *5 (Tex. App.—Amarillo Dec. 7, 2020, no pet.) (mem. op., not designated for publication) (same).

In addition to the rules or factors enumerated in article 17.15, trial courts also may consider the following factors in setting the amount of bail or granting a request for personal bond:

1. the accused's work record;
2. the accused's family and community ties;
3. the accused's length of residency;
4. the accused's prior criminal record;
5. the accused's conformity with previous bond conditions;
6. the existence of other outstanding bonds, if any; and
7. aggravating circumstances alleged to have been involved in the charged offense.

*Smith v. State*, 829 S.W.2d 885, 887–88 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Ex parte Rubac,* 611 S.W.2d at 849–50).

**Discussion**[7]

The trial court was charged with considering these factors and the rules in article 17.15 in its bond determination. We review the same bail criteria to ensure the court did not abuse its discretion. "On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion." *Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313, at *2 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication) (citing TEX. CODE CRIM PROC. art. 17.15; TEX. CONST. art. I, § 11–11a, 13).

**A.     Sufficiently High Bail**

The first factor we consider is whether the bail is "sufficiently high to give reasonable assurance that the undertaking will be complied with." We believe in this circumstance, the $75,000 bail per charge is sufficiently high to give this assurance. Regardless, this factor is neutral in as much as it does not weigh in

---

[7]     The State argues that the trial court's ruling denying personal bond is not reviewable because it is a discretionary decision. We disagree. A number of appellate courts have reviewed a trial court's ruling on a request for personal bond under an abuse of discretion standard. *See, e.g., Ex parte Nimnicht*, 467 S.W.3d 64, 66 (Tex. App.—San Antonio 2015, no pet.); *Ex parte Perez*, No. 02-10-00450-CR, 2011 WL 255292, at *1 (Tex. App.—Fort Worth Jan. 27, 2011, no pet.) (mem. op., not designated for publication); *Ex parte Barnes*, No. 2-10-260-CR, 2010 WL 3433800, at *1 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op., not designated for publication); *Ex parte Gomez-Herrada*, No. 07-20-00177-CR, 2020 WL 7214293, at *5 (Tex. App.—Amarillo Dec. 7, 2020, no pet.) (mem. op., not designated for publication).

favor of or against the imposition of the personal bond Leachman requests.

**B.    Whether Bail is Oppressive and the Ability to Pay It**

The second factor, the requirement that bail is not used as "an instrument of oppression," and the fourth factor, the ability to make bail, are related. Therefore, we consider them together.  Leachman argued in his original application for writ of habeas corpus that *any* bail requiring a surety would be "excessive" under the Eighth Amendment to the U.S. Constitution and will constitute "unlawful oppression" in violation of article 1, section 11 of the Texas Constitution and articles 1.07 and 17.15(2) of the Texas Code of Criminal Procedure.  He argues here, similarly, that the judge's comment that she "underst[ood] and [had] no doubt" that Leachman cannot "afford much of anything" in the way of bail is "prim[a] facie evidence that the trial court intended the requirement of secured bond [*in any amount*] as an effective pretrial detention order."

Leachman's dependence on the court's comment is misplaced.  The judge's supposition that Leachman cannot afford any bail does not preclude her from refusing to grant personal bond.  Leachman relies on *Ex parte Harris*, 733 S.W.2d 712, 713 (Tex. App.—Austin 1987, no pet.), a case in which the trial court set bond at $50,000 for the defendant's conviction of driving while intoxicated. Refusing to reduce the bail amount, the trial court stated:

> I think because of his bad record, I just wouldn't feel right in lowering
> the bond any.  I'd hate to put that upon the citizens of Travis County.

Maybe the Court of Appeals will, but at least that won't be on my back. I just feel a duty to the community to protect the community. If he'd get out and kill someone, I'd never get over it. I'd rather see him in jail than to see someone's life taken, so I'm going to deny the writ and let you go on up to the Court of Appeals and see what they do about it. I just wouldn't feel right with this horrible record.

733 S.W.2d at 714. The court of appeals found the lower court abused its discretion in setting the amount of bail:

It is clear that the district court's refusal to reduce bail was not based on a determination that $50,000 bail is necessary to assure appellant's presence should his conviction be affirmed, nor was it based on a finding that appellant had not made an adequate effort to make bail in the amount set. . . . Rather, the district court elected to set bail, but in an amount calculated to be beyond appellant's means and to assure appellant's continued incarceration. The district court, by so doing, used bail as an instrument of oppression in violation of the constitution and statutes of this State.

*Id.*

Here, although the trial court acknowledged the difficulty Leachman would have in paying the bond, there is nothing in the judge's statement that indicates she was attempting to ensure Leachman remained in confinement. *See Ex parte Bell*, No. 03-09-00037-CR, 2009 WL 1364355, at *3 (Tex. App.—Austin May 12, 2009, no pet.) (mem. op., not designated for publication) (distinguishing *Ex parte Harris*, noting the district court's comments about the conditions that the *Bell* defendant would have to satisfy if released—such as no contact with anyone under eighteen and the requirement that he remain in Bell County—do not suggest the court "was attempting to secure [the defendant's] continued incarceration."). On

10

the contrary, the trial court contemplated and enumerated the conditions that will be imposed should Leachman make bond. Specifically, if Leachman makes bond, the court ordered that he wear a GPS monitor, be on house arrest, not have contact with anyone under the age of seventeen, and be allowed to work at only one location. *Ex parte Harris*, where there was no such contemplation of the defendant's release, is inapposite.

Leachman also relies on *Ex parte Bogia*, 56 S.W.3d 835 (Tex. App.— Houston [1st Dist.] 2001, no pet.) to advance his argument that he should be released on personal bond. In *Ex parte Bogia,* the defendant was charged with second-degree felony theft of more than $100,000 and less than $200,000. *Id.* at 836. The trial court set bond at $360,000. *Id.* There was evidence the defendant's relatives could not help her make bail and that she had been in jail awaiting trial for more than six months. *Id.* at 837. Further, the court reviewed other cases and concluded the defendant's bail far exceeded the bail amounts approved in other theft and even capital murder cases decided by the Court of Criminal Appeals and by this Court.[8] *Id.* at 837–38. The court of appeals reduced the defendant's bond

---

[8] Leachman did not proffer evidence of bail set in other cases for a comparison. And while this issue is not dispositive, a brief survey of other cases involving aggravated assault of a child indicates the amount of Leachman's bond is not unreasonable, given the nature of the charges against him. *See, e.g., Ex parte Campbell*, No. 02-13-00313-CR, 2013 WL 5041031, at *1 (Tex. App.—Fort Worth Sept. 12, 2013, no pet.) (mem. op., not designated for publication) (affirming bail set at $750,000 each for three counts of aggravated sexual assault

11

to $10,000 per the Harris County District Courts' bail schedule. 56 S.W.3d at 840. *Ex parte Bogia* does not support Leachman's request for personal bond. Nor does the Harris County bail schedule apply to his case.[9]

Using Leachman's logic, any refusal to grant personal bond when the defendant cannot afford to pay a bond would be impermissible and oppressive. That is not the law. "The accused's ability or inability to make bond is relevant, but not controlling." *Ex parte Bogia*, 56 S.W.3d at 837 (citing *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)). As noted under article 17.15, the "ability to make bail is to be regarded, and proof may be taken upon this point" as one of many factors to be considered by the trial court.

---

of a child; $500,000 for one count of attempted aggravated sexual assault of a child; and $250,000 for one count of indecency with a child); *See Ex parte Bennett*, No. 02–07–00175–CR, 2007 WL 3037908, at *4 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (affirming trial court's refusal to lower $200,000 bonds for each of three charges of aggravated sexual assault of a child); *McGill v. State*, Nos. 13-99-713-CR, 13-99-714-CR, 2000 WL 34415609, *1 (Tex. App.—Corpus Christi, Oct. 19, 2000, no pet.) (not designated for publication) (affirming trial court's refusal to decrease bond set at $100,000 each for charges of aggravated sexual assault and indecency with a child); *Clemons v. State*, 220 S.W.3d 176, 177 (Tex. App.—Eastland 2007, no pet.) (affirming reduction of bond for aggravated-sexual-assault-of-a-child charges to $150,000 and $100,000). *But see Compian v. State*, 7 S.W.3d 199, 202 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (reducing bond for aggravated sexual assault of a child to $50,000).

[9] The Harris County District Courts' bail schedule does not apply to defendants who are charged with first-degree felonies. The inapplicability of the bail schedule also distinguishes *Ex parte Bogia*.

Like Leachman, the defendant in *Ex parte Nimnicht* argued that his inability to pay the bail assessed by the court weighed in favor of reducing his bail to a personal bond. In its analysis, the court noted, among other things, that "[t]he inability of the accused to pay the amount of bail assessed does not render any amount of bail excessive." 467 S.W.3d at 68 (citing *Ex parte Vasquez*, 558 S.W.2d 477, 480 (Tex. Crim. App. 1977)).[10] The court explained that indigence "is a circumstance to be considered, but is not controlling." *Id.* We agree. Indeed, "[i]f the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Id.* (citing *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)).[11]

---

[10]    *See also Ex parte Campbell*, No. 02-13-00313-CR, 2013 WL 5041031, at *3 (Tex. App.—Fort Worth Sept. 12, 2013, no pet.) (mem. op., not designated for publication) ("The inability to meet the amount set by the trial court does not automatically render it excessive.") (citing *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App. —Fort Worth, no pet.)).

[11]    Leachman attempts to distinguish *Ex parte Nimnicht*, asserting the "trial court's lowering of the original amount militates against a finding of intent to prolong incarceration." The trial court in this case, however, also lowered Leachman's bond from $100,000 to $75,000 per charge. Thus, accepting Leachman's argument, the "trial court's lowering of the original bond" in this case also "militates against a finding of intent to prolong incarceration." We note again that Leachman did not ask for a further reduction in the amount of bond. He simply argued at the trial court, as he does here, that *any* amount of bond is an abuse of discretion and "an instrument of oppression" under article 17.15. None of the cases he cites supports his position.

13

In this case, the trial court did consider Leachman's indigency, acknowledging Leachman's predicament and his potential inability to post bail. Thus, the court evaluated the "ability to make bail" along with all other bail criteria in making its final determination. There is no evidence either that the court ignored Leachman's alleged indigency or utilized bail as means to oppress him and prolong his incarceration.

Further, the Court of Criminal Appeals has said the Legislature, in placing "a mandatory duty" on trial courts to consider the safety of both the victim and of the community when fixing bail, "*requires* trial courts to consider a fact that is not related to the amount the defendant can afford to pay." *Ex Parte Kretzer*, No. PD-1279-11, 2012 WL 1882245, at *1 (Tex. Crim. App. May 16, 2012) (not designated for publication) (citation omitted) (emphasis added); *see also Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd) (overruling appellate issue regarding trial court's refusal to release defendant on personal bond, noting defendant "present[ed] no argument or authority as to why . . . the trial court's denial of his request for personal bond constituted using the power to require bail so as to make it an instrument of oppression" in violation of article 17.15(2) of the Texas Code of Criminal Procedure).

Because we do not believe the bail the trial court set is oppressive—regardless of Leachman's ability to pay it—the second and fourth factors do not weigh in favor of Leachman's release on personal bond.

## C.    The Nature of the Offense

The third factor contemplates "the nature of the offense and the circumstances under which it was committed."  The nature of the offense and the length of possible sentence are key considerations in determining the reasonableness of bail and whether to grant a personal bond.  *Ex parte Rubac*, 611 S.W.2d at 849 (highlighting these as primary factors); *see also Ex parte Nimnicht*, 457 S.W.3d at 67 ("When determining reasonable bail, a trial court shall give the most weight to the nature of the offense and the length of possible sentence.")

Leachman was charged with three counts of aggravated sexual assault against a single nine-year-old boy.  During the writ hearing, the State alleged that Leachman had sexually assaulted this nine-year old boy "regularly, almost daily," including "anal sex with the defendant being the one penetrating the complainant's anus and oral sex with the defendant being the one penetrating the complainant's mouth with this penis."  The nine-year-old boy lived "with his grandmother in the same apartment complex" as Leachman.

Leachman testified during his writ hearing that the abuse against the nine-year-old complainant occurred in Leachman's apartment on multiple occasions.

15

He also admitted that he pled guilty to or has been accused of sexually molesting seven different boys between the ages of nine and fifteen. He pled guilty to three charges of indecency with a child involving three different boy victims ranging in ages from ten to fifteen.[12] And he is now facing three counts of aggravated sexual assault involving a nine-year-old boy.

"Sexual assault of a child is a serious offense." *Ex Parte Bennett*, No. 2-07-175-CR, 2007 WL 3037908, at *2 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (citing *Ex parte Hulin*, 31 S.W.3d 754, 759-60 (Tex. App.—Houston [1st Dist.] 2000, no pet.)). Aggravated sexual assault is a first-degree felony that has a punishment range of five to ninety-nine years or life. TEX. PENAL CODE. §§ 12.32, 22.021(a)(1)(B). This factor weighs against a finding that Leachman should be released on personal bond.

Leachman argues that these incidents are remote in time. The trial court, however, also heard evidence that during his time in jail, as recent as 2015, Leachman received mail that contained "sexually explicit" images.[13] Leachman

---

[12]     Leachman originally was charged with four counts of indecency with a child. The fourth count, involving a different fifteen-year-old boy, was dismissed as part of Leachman's plea agreement. Law enforcement separately investigated allegations that Leachman had sexually assaulted two additional boys. Those allegations did not result in formal charges.

[13]     Tammy Shelby, director of the TDCJ's Mail Systems Coordinators Panel, testified that "sexually explicit" material is defined by the TCDJ's board policy as "any image that is intended to cause sexual excitement or arousal by showing sexual

testified that he "secured or received" child erotica, which Leachman agreed refers to "[s]hort stories involving sexual abuse of children." He also received photos of young children who were shirtless and photos of children in provocative positions.[14] The trial court reasonably could have considered this additional information as a factor in considering whether to deny personal bond to Leachman.

## D. Safety of the Victim and of the Community

In making its bond determination, the trial court had to consider the "future safety of a victim of the alleged offense and the community." In addition to the prior convictions and allegations of sexual assault involving seven young boys, Leachman also testified at the writ hearing that he was previously investigated in Missouri for "soliciting children to take photos of their feet" and in Pennsylvania for "child pornography." He testified that he was acquitted of those charges.

During the writ hearing, Leachman testified he was assigned to parole for his earlier offenses in the TDCJ's "Super-Intensive Supervision Program" and the "Sex Offender Treatment Program" and assigned to a halfway house.[15] He argued

---

activity from any vantage point to include frontal nudity, to include the nipple, the areola, the genitals or the anus of either gender."

[14] Leachman said he did not keep the photos of children he considered to be in provocative positions.

[15] Leachman remains in custody, however, because of the pending aggravated sexual-assault-of-a-child charges. Should Leachman be released on personal bond, he would begin living at and participating in the programs at the halfway house.

17

that because of the strict rules he must follow to participate in such programs, including living at a halfway house with a GPS device, a personal bond was adequate.

Catherine Green, an assistant regional director in the TDCJ's Parole Division, testified at the writ hearing about the monitoring procedures used on parolees who live in halfway houses after their release from incarceration.[16] She testified that the Super-Intensive Supervision Program, which is "on the highest level of supervision," requires parolees to wear GPS ankle monitors that alert parole officers when parolees violate the daily schedules they receive from the officers.

She clarified, however, that while sex offenders with GPS devices are given mandatory travel routes when they check-out of the halfway house—or ultimately, their homes upon release from the halfway houses—there is no way to ensure they do not encounter children. She testified that the only way to ensure there is no contact between a sex offender and a child is to incarcerate the offender in a jail or prison facility. She also testified that if there is a violation involving the GPS device, such as an offender traveling to a prohibited location or cutting off the GPS

---

[16]    At the conclusion of the writ hearing, Leachman asked that the hearing be continued so he could subpoena "the appropriate parole and halfway house officials" to testify about the halfway house to which he would be released on parole and the terms by which he would be monitored there. The court granted the continuance and reconvened the writ hearing three weeks later.

18

device, there would be a lag time between discovery of the violation and the time a judge is alerted of the violation. She further testified that the GPS data they keep at the Super-Intensive Supervision Program is not equally visible or shared with the county. Thus, a trial court would probably have to subpoena the records to have access to the monitoring information. Finally, she testified that the halfway house is "basically a transitional center" where parolees live, on average, from six months to two years and that the goal of the program is to "move offenders out of the halfway house as quickly as possible."[17]

Given the inability to prevent Leachman's contact with children while out on parole or awaiting trial, his past criminal record of indecency with a child and aggravated assault of a child, and the inability of the trial court to readily monitor his whereabouts, this factor weighs against the imposition of a personal bond. In *Ex parte Kretzer*, for example, the prosecution did not dispute the evidence presented by the defense about the defendant's family, his ties to the community, and his inability to make bail. "However, the prosecutor asked the court to consider the nature of the charged offense and the future safety of the victims of the offense and of the community. Appellant's alleged involvement in three offenses of indecency with a child show[ed] that, if free on bond pending trial, he

---

[17] Green testified that the Parole Board reviews each parolee in super-intensive supervision annually to determine if the parolee needs to continue with that program.

19

might endanger the future safety of the child victims, as well as the future safety of the community." *Ex parte Kretzer*, No. 09–11–00181–CR, 2011 WL 2732598, *2 (Tex. App.—Beaumont July 13, 2011) (mem. op., not designated for publication), *pet. dism'd improvidently granted*, No. PD-1279-11, 2012 WL 1882245 (Tex. Crim. App. May 16, 2012).

The trial court here reasonably could have concluded that the nature of Leachman's alleged crimes and prior convictions involving children warranted the imposed bail to ensure the safety of the community.

## E.  Other Factors

Trial courts may also consider factors such as the accused's work record, his family and community ties, his length of residence, his prior criminal record, his conformity with previous bond conditions, the existence of other outstanding bonds, if any, and aggravating circumstances allegedly involved in the charged offense. *Smith*, 829 S.W.2d at 887–88.  Leachman concedes that due to his "lengthy incarceration," he has not had the opportunity "to maintain a residence, to build assets, to establish a work history, or to create ties to a community." Leachman argues that these common-law factors "cannot have *independent* weight," and to give them weight along with the article 17.15 factors "violates fundamental fairness." (Emphasis in original).  Leachman does not cite any authority for this proposition.

20

With respect to the final of these considerations, he asserts that the only aggravating factor involved in his pending charges is the complainant's age. We agree that the complainant's age is an aggravating factor in the charges against Leachman, and we believe the other of these factors also weigh against the imposition of personal bond, for the reasons already noted. [18]

## Due Process Concerns

Leachman asserts the trial court's ruling violated his due process by foregoing his presumption of innocence, because of the delay in his trial and the question of whether the State can retry the case.[19] Leachman did not brief these due process issues in his written application for habeas relief or raise them during the habeas hearing.[20] As such, Leachman waived the right to raise these arguments in this Court. *See Ex parte Cook*, No. 02-18-00537-CR, 2019 WL 2323643, at *3 (Tex. App.—Fort Worth May 31, 2019, no pet.) (mem. op., not designated for

---

[18] *See Combs v. State*, 652 S.W.2d 804, 806 (Tex. App.—Houston [1st Dist.] 1983, no pet.) (holding trial court did not abuse discretion in denying defendant's motion for release on personal bond even though evidence showed (1) defendant was Houston resident at time of his arrest; (2) defendant had lived in Houston most of his life; and (3) there was no evidence that showed defendant would leave Houston area if released on personal bond.)

[19] In his trial court brief in support of his application for habeas corpus relief, Leachman argued that the State's ability, if any, to retry the case and the overturning of the original conviction are factors to be considered in setting bail, but he did not make a specific due process argument.

[20] Leachman merely said in his trial court brief that "incarceration of those who cannot [provide cash or sureties], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1972)).

21

publication) ("By failing to include this [due process] ground in his habeas corpus application or to argue it specifically to the court, Cook failed to preserve this argument for our review.") (citing TEX. R. APP. P. 343.1(a)); *see also Ex parte Tucker*, 977 S.W.2d 713, 715 (Tex. App.—Fort Worth 1998) ("An order denying habeas relief on the merits is appealable only with regard to those matters properly raised by the pre-trial habeas corpus petition and addressed by the trial court."), *pet. dism'd*, 3 S.W.3d 576 (Tex. Crim. App. 1999).

Leachman asks this Court to infer that a comment by the trial court judge implies the court already presumed his guilt. After Leachman argued to the trial court that there is "no specific evidence" to show that he is "more dangerous than the run-of-the-mill person who's charged with aggravated sexual assault," the trial court said:

> But you understand this is a retrial of a case that was overturned by [f]ederal court because of [a] Faretta issue?[21]

Leachman argues this statement "indicates that the trial court gave weight, in setting bail, to the original conviction." We decline to ascribe such meaning to this comment. In any event, given our analyses of the article 17.15 rules and the

---

[21]    In *Faretta v. California*, 422 U.S. 806, 818–19, 835–36, the Supreme Court held a competent criminal defendant has a Sixth Amendment right to waive his right to counsel and represent himself at trial. *See Leachman v. Stephens*, 2015 WL 5730378, at \*4-5 (holding trial court erred in refusing to allow Leachman to represent himself at trial of sexual-assault-of-a-child charge).

supplemental factors, we find that the trial court properly exercised its discretion in refusing to release Leachman on personal bond.

## The Excluded Letter

Finally, Leachman complains that the trial court's refusal to admit a letter into evidence was an abuse of discretion. Specifically, Leachman attempted to offer into evidence a letter he wrote to the district attorney to reflect "an open offer [Leachman made] to the State since 2016 to [be] evaluated by any of their experts of their choosing."[22] Leachman said the letter was relevant because it showed "the State has had the opportunity to determine whether there is some kind of dangerousness beyond just generalities." The State objected to the admission of the letter as hearsay and as irrelevant to the issue of bail. Sustaining the objection based on relevance and hearsay, the court said the letter is

> no different from any other defendants making a counteroffer on something and I don't necessarily believe that that really is relevant to the issue here or really relevant to anything. I mean this is just a counteroffer and negotiations that you're making and anybody can make any offer about anything. And the fact that you might make an offer about something, you know–I routinely get people making offers, counteroffers, you know. . . . Just because you're making an offer of something doesn't mean that it's really relevant, it's just your counteroffer to try to get them to offer you something different.

---

[22] Leachman stated in his brief that the evaluation referred to in the letter would have allowed the court to "make informed decisions about whether [he] represent[s] an ongoing danger to the community."

23

The court took judicial notice "that Mr. Leachman has offered himself to be examined regarding future dangerousness."

The only authorities Leachman cites in support of his argument that the letter should have been admitted are cases in which convictions were appealed. The analyses in those cases, however, were based on the rules of evidence. Those analyses are inapplicable here because the rules of evidence do not govern bail hearings. "Except for privileges, the rules of evidence do not apply to proceedings regarding bail, except hearings to deny, revoke, or increase bail." *Ex parte Garcia*, No. 05-02-01542-CR, 2002 WL 31546123, at *2 (Tex. App.—Dallas Nov. 18, 2002, no pet.) (not designated for publication) (citing TEX. R. EVID. 101(d)(1)(E)); *see also Ex parte Prelow*, 929 S.W.2d 54, 56 (Tex. App. —San Antonio 1999, no pet.) (noting rules of evidence do not apply at bond reduction hearings). Leachman concedes as much, citing Texas Rule of Evidence 101(e)(3)(C), which says the rules of evidence do not apply to "bail proceedings other than hearings to deny, revoke, or increase bail." TEX. R. EVID. 101(e)(3)(C).

Regardless, as the State points out, the trial court took judicial notice of the letter. Accordingly, the trial court did not abuse its discretion in sustaining the State's objection to the letter.

**Motion for Sanctions**

After the State filed its response to Leachman's appellate brief, Leachman filed a motion for sanctions against the State and the District Attorney. Leachman argues that the State violated the terms of his 1999 plea agreement by arguing that he should not be released on personal bond, "even through the bargained-for sentence now calls for [his] release on parole." Leachman provides no legal basis for his motion, nor does he cite any case law that precludes the trial court, or this Court, from considering his prior criminal record in connection with his request for personal bond. We deny his motion for sanctions.

**Conclusion**

We conclude the trial court did not abuse its discretion in declining to release Leachman on personal bond. And, as Leachman notes, he does not seek the imposition of a lower amount of bond. Therefore, we affirm the trial court's denial of Leachman's application for writ of habeas corpus. We deny Leachman's motion for sanctions.

**PER CURIAM**

Panel consists of Justices Countiss, Rivas-Molloy, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).

25