**Opinion issued August 1, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-25-00448-CR

————————————

## EX PARTE KEONTE KISHON REESCANO

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1916100**

---

### MEMORANDUM OPINION

Appellant Keonte Kishon Reescano appeals from the trial court's denial of his pretrial application for writ of habeas corpus.

We affirm.

### Background

Appellant Keonte Kishon Reescano was indicted for aggravated robbery with a deadly weapon, burglary with intent to commit assault on a "family" member by

1

impeding her breathing, and unlawful possession of a firearm by a felon in relation to an incident on June 30, 2024. The indictment alleges that Reescano forcibly and without permission, while armed, entered the home of Ileana Guerra Garcia, choked her, and forced her to withdraw $1,000 from an ATM. Reescano's charges correspond to three underlying trial cause numbers: 1874940, 1874941, and 1874942, and the trial court set his bond at $50,000, $75,000, and $25,000 for each case, respectively. Reescano filed a pretrial application for writ of habeas corpus requesting that he be released on a personal recognizance bond or that his bond be reduced to $1,000 on each case.[1]

During the hearing on the writ application, Reescano, proceeding pro se, declined the trial court's offer to reset the case in order to secure a witness, stating, "I don't want to continue resetting the hearing to try to secure his appearance," "I just rather go through with the proceeding today" and "[t]ry to [put] a case on." Reescano was the only person who testified at the hearing. He testified that he had "evidence on file" such as "the affidavit of indigency and . . . letters of [an] inmate trust account[,]" that he "never . . . had a salary of $150,000," that he was "willing to subpoena [his] tax returns from [the] IRS as proof" of such, and that the "consecutive bonds issued totaling in the amount of $150,000, [of] which 10 percent

---

[1]     Although Reescano challenges the bond set on all three underlying trial court cases, he filed his habeas application under underlying cause number 1874940 only.

2

is . . . $15,000 . . . [were] . . . excessive for an indigent defendant." Reescano also testified that "[he] ha[d] attempted to post bond [and] to pay the premium to the professional bondsm[e]n" but they "required no less than $12,500 cash up front" and "[o]ne [bondsman] required the house as collateral [and] five cosigners[,]" which "[wa]s clearly excessive."

Reescano testified that he was "bankrupt" and that making "a monetary bond in any amount [was] virtually impossible." Reescano contended that he "pose[d] no threat to the community at large" and referred to his "strong community ties" by residing in Harris County his whole life and his entire family being "domiciled in Houston, Texas . . . ." Reescano alleged, however, that he was not in communication with "most of [his] associates" or his family.

Reescano argued that "sufficient conditions ha[d] been set to secure [his] appearance, like the 24/7 GPS monitoring, and [he was] not opposed to any other restrictions that might be set after today. [He] w[ould] go to work and go home and appear at court on the dates . . . ." Reescano further argued that he "shouldn't be inhibited merely because of [his] inability to afford a cash bail" and "for there to be a just resolution, it [wa]s imperative that [he] be released." Reescano alleged he had known the complainant for fifteen years and that the charges against him were "trumped up." Reescano concluded his direct testimony by asking the trial court to "restor[e] [him] back to the full enjoyment of liberty."

On cross examination, Reescano acknowledged that in setting bail, the trial court could consider his criminal history, such as his conviction for robbery in 2018, plea of guilty to assault with a family member with a prior conviction for family violence, previous sentence to prison time, as well as his current charge of aggravated robbery—a crime involving violence.

At the conclusion of the hearing, the trial court denied Reescano's requested relief. The trial court stated that although Reescano had presented a "well-worded argument and testimony," the court had to "consider more than just [Reescano's] inability to make bond under 17.15." The trial court later reiterated that it had to consider "[a]ll the factors in 17.15."[2]

**Standard of Review**

We review a trial court's decision to grant or deny habeas corpus relief for abuse of discretion. *See Ex Parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013) (stating that "the decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail will not be disturbed by this Court in the absence of an abuse of discretion") (internal quotation marks omitted); *see also Ex parte Rubac*,

---

[2] The trial court stated, "I would hate for you to plead guilty to a crime that you are not guilty of just because you are sitting in custody. I don't want that to happen. So, I am willing to get you a trial date as quickly as possible." The trial court informed Reescano that it could "grant [him] funds for an investigator" and if "[a]t any point in time [he] want[ed] an attorney, [the court would be] happy to appoint [him] one."

611 S.W.2d 848, 850 (Tex. Crim. App. 1981) (reviewing bail pending appeal for abuse of discretion); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (same). When a habeas appeal pertains to pretrial bail, we "measure the trial court's ruling against the relevant criteria by which the ruling was made." *Montalvo*, 315 S.W.3d at 593; *see also Ex parte Dixon*, No. PD-0398-15, 2015 WL 5453313, at *2 (Tex. Crim. App. Sept. 16, 2015) (not designated for publication) ("Habeas courts determine the bearing of the evidence on the relevant bail criteria *only* in the first instance. On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion.") (emphasis in original) (citing TEX. CODE CRIM. PROC. art. 17.15; TEX. CONST. art. 1, §§ 11-11a, 13).

We will not disturb a trial court's ruling unless it falls outside the zone of reasonable disagreement. *See Ex parte Allen*, 619 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("A trial court abuses its discretion if its decision lies outside the zone of reasonable disagreement."). "To determine whether a trial court abused its discretion [in ruling on a request to reduce bail], we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd); *see also Ex*

5

*parte LaValle*, 705 S.W.3d 832, 838 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd) (citing *Ex parte Allen*, 619 S.W.3d at 816).

In reviewing a trial court's ruling on a habeas claim, we view the record and evidence in the light most favorable to the court's ruling. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021) (citing *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006)). "The mere fact that a trial [court] may decide a matter within [its] discretionary authority in a different manner than an appellate [court] in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). It is the appellant's burden to establish that the trial court abused its discretion in its bail determination. *Ex parte Rubac*, 611 S.W.2d at 849; *see also Ex parte McManus*, 618 S.W.3d 404, 407 (Tex. App.—Amarillo 2021, no pet.) ("In a proceeding seeking a reduction in the amount of pretrial bail, the accused bears the burden of proof to show that the bail is excessive."); *Ex parte Beard*, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref'd) ("The burden is on the accused to prove that bail is excessive.").

## Applicable Law

The United States and Texas Constitutions protect the right to be free from excessive bail. U.S. CONST. amend. VIII; TEX. CONST. art. 1, § 11. The primary

6

purpose of bail is to secure the presence of the defendant in court for trial. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Ex Parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston 14th Dist.] 2016, no pet.). "Determining the appropriate bail amount is a balancing act between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial." *Ex parte Cardenas*, 557 S.W.3d 722, 730 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) (internal quotation marks and quoting citation omitted).

In considering whether the trial court abused its discretion in denying Reescano's application for writ of habeas corpus requesting that his bond be reduced, we apply the factors enumerated in Article 17.15 of the Texas Code of Criminal Procedure.[3] S*ee Ex parte Perez*, No. 02-10-00450-CR, 2011 WL 255292, at *1–4 (Tex. App.—Fort Worth Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (considering Article 17.15 factors when defendant requested reduction in bail); *Ex parte Barnes*, No. 2-10-260-CR, 2010 WL 3433800, at *1–3 (Tex. App.—Fort Worth Aug. 31, 2010, no pet.) (mem. op., not designated for

---

[3] As to Reescano's request that he be released on a personal recognizance bond, he is ineligible for such relief pursuant to Article 17.03 because he is charged with aggravated robbery, an offense involving violence. *See* TEX. CODE CRIM. PROC. art. 17.03(b-2)(1) (stating "a defendant may not be released on personal bond if the defendant" is charged with "an offense involving violence"); TEX. CODE CRIM. PROC. art. 17.03(b-3)(2)(P) (defining aggravated robbery as offense involving violence); *see also Ex parte Delong*, 686 S.W.3d 438, 442 (Tex. App.—Fort Worth 2024, no pet.) (recognizing personal bond is not permitted when defendant is charged with offense involving violence).

publication) (same); *Ex parte Gomez-Herrada*, No. 07-20-00177-CR, 2020 WL 7214293, at *5 (Tex. App.—Amarillo Dec. 7, 2020, no pet.) (mem. op., not designated for publication) (same).  Article 17.15 instructs trial courts to consider the following factors in setting a defendant's amount of bail:

1.    The bail and any conditions shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2.    The power to require bail is not to be so used as to make it an instrument of oppression.

3.    The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense involved violence.

4.    The ability to make bail shall be considered, and proof may be taken on this point.

5.    The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6.    The criminal history record information for the defendant shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7.    The citizenship status of the defendant shall be considered.

TEX. CODE CRIM. PROC. art. 17.15.

In addition to the Article 17.15 factors, trial courts also may consider the following factors in setting the amount of bail:

1.    The accused's work record;

2.    The accused's family and community ties;

3.    The accused's length of residency;

4.    The accused's prior criminal record;

5.    The accused's conformity with previous bond conditions;

8

6. The existence of other outstanding bonds, if any; and

7. Aggravating circumstances alleged to have been involved in the charged offense.

*See Smith v. State*, 829 S.W.2d 885, 887–88 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d at 849–50)).

We review the same bail criteria on appeal. "On appellate review, it is the duty of the reviewing court to measure the ultimate ruling of the habeas court against the relevant bail factors to ensure that the court did not abuse its discretion." *Ex parte Dixon*, 2015 WL 5453313, at *2 (citing TEX. CODE CRIM PROC. art. 17.15; TEX. CONST. art. 1, §§ 11-11a, 13). We determine whether a bail amount is reasonable "on a case-by-case basis, weighing factors unique to each defendant and each offense." *Ex parte Cardenas*, 557 S.W.3d at 730; *see also Ex parte Beard*, 92 S.W.3d at 571 (noting "[c]ase law is of relatively little value in addressing the ultimate question of the appropriate amount of bail" because bail "cases are so individualized that generalization from results reached in others is difficult") (quoting citation omitted).

## Discussion

We review the relevant bail factors based on the record before us to determine whether the trial court abused its discretion.

## A. Sufficiently High Bail

We first consider whether the bail is "sufficient to give reasonable assurance

that the undertaking will be complied with." TEX. CODE CRIM. PROC. art. 17.15(a)(1). The $150,000 total bail amount in this case was sufficient to give reasonable assurance that Reescano will appear in court.

## B. Whether Bail is Oppressive and Ability to Pay Bail

The second factor, the requirement that bail not be used as "an instrument of oppression," and the fourth factor, the ability to make bail, are related. We thus consider them together.

Reescano argued in his application for writ of habeas corpus that his bond amount was "excessive" and in violation of the Eighth and Fourteenth Amendments to the United States Constitution, Article 1, Sections 11, 13 and 19 of the Texas Constitution, and Article 17.03 of the Texas Code of Criminal Procedure. In his application, Reescano stated that "reasonable alternatives exist" as opposed to a "monetary bond." In support, he attached an "unsworn declaration of indigency," contending that he "d[id] not have the financial resources to either post th[e] [bond] amount or make arrangements for a premium to be paid to a professional bond[sman] on [his] behalf. Nor d[id] [he] have sufficient property that may be posted in lieu of a cash or surety bond." Reescano stated that he "ha[d] no current source of income and ha[d] no financial reserves in the form of bank accounts, savings accounts, certificates of deposit, or any other financial instruments that [he] can draw upon to obtain cash for a monetary bond. Further, [he] ha[d] no real or personal property that

10

[he could] sell in order to obtain the funds to post . . . bail [or] bond."

"The ability of an accused to post bail is a factor to be considered, but the inability to make the bail set by the trial court does not automatically render the bail excessive." *Ex parte Tomlinson*, No. 14-02-00784-CR, 2002 WL 31008642, at *2 (Tex. App.—Houston [14th Dist.] Sept. 5, 2002, no pet.) (mem. op., not designated for publication); *Ex parte Bogia*, 56 S.W.3d 835, 837 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("The accused's ability or inability to make bond is relevant, but not controlling."). "If the ability to make bond in a specified amount controlled, the role of the trial court in setting bond would be unnecessary and the accused would be able to set his own bond." *Ex parte Tomlinson*, 2002 WL 31008642, at *2.

"Bail set in a particular amount becomes oppressive when it is based on the assumption that the defendant cannot afford bail in that amount and when it is set for the express purpose of forcing the defendant to remain incarcerated." *Ex parte Moreno*, No. 01-20-00312-CR, 2021 WL 4733239, at *9 (Tex. App.—Houston [1st Dist.] Oct. 12, 2021, no pet.) (mem. op., not designated for publication) (citing *Ex parte Nimnicht*, 467 S.W.3d 64, 70 (Tex. App.—San Antonio 2015, no pet.)); *Ex parte Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (stating that where bail amount was set "solely to prevent [defendant] from getting out of jail," "bail [was] being used as an instrument of oppression"). We thus consider whether the record reflects the trial court made its decision regarding bail

11

"for the purpose of forcing [Reescano] to remain incarcerated pending trial." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

During the hearing on Reescano's application, Reescano argued that the bond amount set between the three cases totaling $150,000 was "excessive" and that his "right to liberty" required "proper methods of discretion." Reescano testified that he was "bankrupt," that he was not in contact with his family or most of his "associates," and that he was unable to pay a bondsman the required fee. But Reescano did not provide any bank account statements or other evidence reflecting he was "bankrupt" or reflecting what, if any funds, he possessed.[4] Although Reescano offered to subpoena his tax returns from the IRS, none were provided to the trial court during the hearing. *See Ex parte Bartolo*, No. 01-22-00544-CR, 2022 WL 17254957, at *7 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("Generally, to show that he cannot make bail, a defendant must demonstrate that his funds and his family's funds have been exhausted.") (citation omitted); *Ex parte Martinez*, No. 10-17-00420-CR, 2018 WL 1958016, at *3 (Tex. App.—Waco Apr. 25, 2018, no pet.) (mem. op., not designated for publication) (affirming denial of writ requesting reduction in bail amount and stating appellant did not explain "what efforts, if any, were made to furnish the

---

[4] Reescano referred to an "affidavit of indigency" and "letters of [an] inmate trust account" being on file. The record before this Court does not contain any letters of an "inmate trust account."

bond") (quoting citation omitted).

The hearing also was devoid of corroborating testimony from any witnesses regarding Reescano's or others' inability to secure finances on his behalf to post bail. Having only the habeas corpus application, Reescano's unsworn declaration of indigency, and Reescano's testimony to consider, the trial court was assigned the task of determining whether his contentions were credible. *See Ex parte Reyes-Martinez*, 653 S.W.3d 273, 280 (Tex. App.—Austin 2022, no pet.) ("The trial court is the exclusive judge of witness credibility, and we afford it considerable discretion in making those challenging determinations.") (internal quotation marks omitted). As the sole arbiter of witness credibility, it was within the trial court's province to believe or disbelieve Reescano's testimony and the averments in his application that he was bankrupt or unable to pay a bond, and we defer to the trial court's credibility assessment. *See id.*; *see also Ex parte Everage*, No. 03-17-00879-CR, 2018 WL 1788795, at *9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication) (observing that bail cases involve "the difficult task of weighing the specific facts of a case against many, often contravening factors, and often in the face of scant evidence").

Even assuming that the trial court credited as true Reescano's testimony and the statements in his application, that would not automatically establish that the bond amount was excessive. *Ex parte Bogia*, 56 S.W.3d at 837 ("[An] accused's ability

13

or inability to make bond is relevant, but not controlling.") (citing *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975)).  When considering whether a particular bail amount is reasonable, Article 17.15 requires consideration of a defendant's ability to make bail.  *Ex parte Martinez*, 2018 WL 1958016, at *3.  But an "inability to make bail, even to the point of indigence, does not control over the other factors."  *Id.* (quoting *Ex parte Brossett*, 524 S.W.3d 273, 276 (Tex. App.—Waco 2016, pet. ref'd).  "The ability to make bail shall be considered, and proof may be taken on this point" as one of many factors to be considered by the trial court. *See* TEX. CODE CRIM. PROC. art. 17.15(a)(4); *see also Ex parte Martinez*, 2018 WL 1958016, at *3 (holding trial court did not abuse discretion in denying retired military veteran's request to reduce bail despite appellant's and his sister's testimony that he could not make bail and taking into consideration other factors in affirming). As the Court of Criminal Appeals has clarified, the Legislature, "[b]y placing a mandatory duty on trial courts to consider the safety of the victim and the safety of the community in fixing bail . . . requires trial courts to consider a fact that is not related to the amount the defendant can afford to pay."  *Ex Parte Kretzer*, No. PD-1279-11, 2012 WL 1882245, at *1 (Tex. Crim. App. May 16, 2012) (not designated for publication) (citation and quoting citation omitted).  Thus, even if Reescano was unable to pay the bail set, such factor, as the trial court properly noted, is weighed against the other factors of Article 17.15.

14

Based on the record and the limited evidence before the trial court on these bail factors, we cannot conclude the trial court set the amount of bail for the express purpose of keeping Reescano incarcerated or as a means of oppression. *Ex parte Grant*, No. 01-23-00889-CR, 2024 WL 924433, at *4 (Tex. App.—Houston [1st Dist.] Mar. 5, 2024, no pet.) (mem. op., not designated for publication) (noting "nothing in our record shows that the trial court intentionally set a high bail amount to keep [appellant] incarcerated"). Because there is no indication that the trial court used bail as an instrument of oppression, the second and fourth factors do not weigh in favor of Reescano's requested relief.

We further note that the bail amount set by the trial court in this case is lower than in other cases involving a defendant charged with a first-degree felony offense. *See, e.g., Ex parte Stocker*, No. 14-20-00467-CR, 2020 WL 7711348, at *3 (Tex. App.—Houston [14th Dist.] Dec. 29, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding that $500,000 is reasonable bail for first-degree charged offense and $200,000 is reasonable bail for second-degree charged offense); *Ex parte Tata*, 358 S.W.3d 392, 399 n.6 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) ("[T]his Court has previously approved bail amounts ranging from $100,000 to $600,000 for first degree felony offenses . . . ."). Here, Reescano was charged not only with a first-degree felony, but also with second-degree and third-degree felonies. The trial court set bail in the amount of $75,000 on the first-degree felony,

and $50,000 and $25,000 on the second-degree and third-degree felonies, respectively.

## C. Nature of Offense

The third factor contemplates "the nature of the offense and the circumstances under which [it] was committed." TEX. CODE CRIM. PROC. art. 17.15(a)(3). The nature of the offense and the length of possible sentence are key considerations in determining the reasonableness of bail. *Ex parte Rubac*, 611 S.W.2d at 849 (highlighting these as primary factors); *see also Ex parte Nimnicht*, 457 S.W.3d at 67 ("When determining reasonable bail, a trial court shall give the most weight to the nature of the offense and the length of possible sentence.").

Reescano was charged with aggravated robbery with a deadly weapon, a second-degree felony; burglary with intent to commit assault on a "family" member by impeding their breathing, a first-degree felony; and unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE §§ 29.03(a)(2), 30.02(a)(3), 46.04. The indictment alleges Reescano broke into Garcia's home in the middle of the night, choked her, and forced her at gun point to withdraw $1,000 from an ATM. The punishment range for the charged offenses are two to twenty years, five to ninety-nine years, and two to ten years, respectively. *See* TEX. PENAL CODE §§ 12.33(a), 12.32(a), 12.34(a).

The nature of the offenses and these ranges of punishment, should Reescano be found guilty, weigh in favor of the trial court's ruling. *See In re Hulin*, 31 S.W.3d 754, 759-61 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("The primary factors to be considered in determining what constitutes reasonable bail are the punishment that can be imposed and the nature of the offense.").

## D.    Safety of Victim and Community

Reescano was charged with breaking into Garcia's home in the middle of the night, choking her, and forcing her at gun point to withdraw $1,000 from an ATM. Reescano testified that he and Garcia used to date "on and off" since they were fourteen years old. He suggested that Garcia was "spiteful" and made "cold allegations" against him. In making its bond determination, the trial court had to consider the future safety of Garcia and the community.

Based on the violent nature of the charged offenses, the trial court reasonably could have concluded that Reescano posed a threat to Garcia and the community. This factor supports the trial court's bond decision and the rejection of Reescano's request to lower his bond. *See Burns v. State*, No. 05-23-01013-CR, 2024 WL 909840, at *5 (Tex. App.—Dallas Mar. 4, 2024, no pet.) (mem. op., not designated for publication) (stating that in "[c]onsidering the seriousness and violence of the charged [first-degree felony] offense, the trial court could have concluded appellant

posed a threat to the community" and noting that "this factor weigh[ed] against a determination [that] the amount of bail was excessive").

### E.     Other Factors

Trial courts may also consider factors such as the accused's work record, family and community ties, length of residency, prior criminal record, conformity with previous bond conditions, existence of other outstanding bonds, if any, and aggravating circumstances involved in the charged offense. *Smith*, 829 S.W.2d at 887–88 (citing *Ex parte Rubac*, 611 S.W.2d at 849-50).

Reescano testified that he had resided in Harris County his entire life and that his family resides in Houston. *See Ex parte Davila*, No. 04-19-00276-CR, 2019 WL 4280067, at *2 (Tex. App.—San Antonio Sept. 11, 2019, no pet.) (mem. op., not designated for publication) (noting that evidence of defendant's inability to afford bail and his family ties to community were not enough to establish bail amount set by trial court was excessive). Reescano asserted, however, that his family does not keep in contact with him due to his criminality—an indication he did not have significant family ties. As noted previously, no one testified on Reescano's behalf stating they would ensure court conditions were followed or that Reescano could reside with them, nor did anyone testify about his character to ensure that he was not a flight risk. These facts do not favor reduction in bond. *Cf. Ex parte Estrada*, 640 S.W.3d 246, 253 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (concluding

that several factors "favor[ed] a lower, more achievable bail amount," including testimony of appellant's family members that they would ensure conditions set by court would be followed, and appellant's plan to reside with family upon release from custody).

The record also reflects that in addition to his current charges, Reescano has a criminal history consisting of a conviction for robbery and a plea of guilty to assault on a family member with a prior conviction. Given our analysis of Article 17.03 and the Article 17.15 and supplemental factors, we hold the trial court weighed the relevant factors and properly exercised its discretion in denying Reescano's request to lower his bond.

## Conclusion

Based on the record, we cannot conclude the trial court abused its discretion in denying Reescano's application for writ of habeas corpus. The serious and violent nature of the charged offenses, the potential multi-decade sentence, and Reescano's prior criminal record, including convictions for robbery and assault, all weigh heavily against any mitigating factors.

We affirm the trial court's judgment denying Reescano's pretrial application for writ of habeas corpus.

Veronica Rivas-Molloy<br>
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

Do not publish. TEX. R. APP. P. 47.2(b).